PACCAR INTERNATIONAL,
INC., Plaintiff,

v.

COMMERCIAL BANK OF KUWAIT,
S.A.K., Defendant.

No. CV 84–3255–DWW(JRx).

United States District Court,
C.D. California.

May 25, 1984.

**784**

Baker & McKenzie, New York City, Danning, Gill, Gould, Joseph & Diamond, Los Angeles, Cal., for plaintiff.

Law Office of Linda G. Lipscomb, San Francisco, Cal., for defendant; C. Thorne Corse, of counsel.

## ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

DAVID W. WILLIAMS, Senior District Judge.

### I.

Plaintiff, Paccar International, Inc. (Paccint), contracted with IHI Kuwait Company (IHI) to sell 112 trucks and related equipment which were to be resold to the Kuwait Oil Company (KOC) by IHI. The contract provided that Paccint was to manufacture trucks and equipment, have the goods inspected and approved by KOC in the United States, and then ship the goods to Kuwait. IHI was to receive them, complete pre-delivery work, make any necessary warranty repairs, and deliver the goods to KOC.

In order to protect its interests, KOC demanded security from IHI in the form of performance guarantees. At IHI's request, defendant Commercial Bank of Kuwait (CBK) issued performance guarantees in KOC's behalf in the amount of $3,358,-801.00. That figure represented 10% of the purchase price of the goods to be paid by KOC. IHI demanded similar performance guarantees from Paccint. Paccint arranged with CBK to have performance guarantees issued in IHI's favor equal to the amount issued to KOC. Paccint also arranged with Chase Bank International to have a standby Letter of Credit for up to $3,358,801.00 issued in favor of CBK. The terms of that Letter of Credit provided that CBK was entitled to draw after giving Chase advance notice and stating that the amount demanded equals the amount CBK was obligated to pay IHI under the performance guarantee issued to IHI. Paccint and IHI also entered into a "side agreement" which provided that IHI was not to make a demand upon its guarantee unless IHI had to pay KOC an amount equal to or greater than the amount demanded. In other words, IHI could make a demand on its guarantee only if it had to satisfy a similar demand by KOC. Thus, if the trucks did not conform to specifications and KOC was not satisfied, it would complain to IHI which would then complain to Paccint.

Paccint delivered the trucks to IHI which in turn delivered the trucks to KOC. KOC accepted delivery of the equipment and payment in full was made. In February, 1984, IHI demanded payment by Paccint in the amount of $1,492,566 for warranty work allegedly done on the equipment delivered to KOC. Paccint contends that IHI's demand was not legitimate because the amount requested would have required, among other things, a larger work force than IHI had, or with the amount of men claimed to have worked, much less time than that claimed to have been expended. IHI then made demand against CBK under IHI's guarantee. On May 1, 1984, CBK telexed Chase demanding payment of $1,492,566.60 under the letter of credit. The draw was scheduled to be made on May 9th. Paccint questioned the legitimacy of the demand because it was based on an allegedly false claim by IHI. Additionally, Paccint contends that CBK had subjective reasons for making the demand on the

letter of credit: IHI's account with CBK was overdrawn by approximately $3 million and payment under the letter of credit would be applied to IHI's account to lessen the overdraft. The validity of CBK's demand was questioned also because there was no evidence of a claim by KOC against IHI and the side agreement between IHI and Paccint precludes a claim by IHI unless KOC has made a demand against IHI. Paccint sought a temporary restraining order prohibiting CBK from drawing on the letter of credit and this court issued a restraining order. A hearing regarding the issuance of a preliminary injunction was set for May 17 but was continued till May 23 because extensive briefs were filed the morning of the 17th. CBK opposed the issuance of a preliminary injunction on the grounds that this court did not have personal jurisdiction over it and that the criteria for issuing a preliminary injunction were not satisfied. After reviewing the papers filed and hearing oral argument, this court finds that it has jurisdiction over CBK and that a preliminary injunction should issue.

## II.

### A. *Jurisdiction.*

■ CBK contends it has no contacts with this jurisdiction which justify this court's exercise of jurisdiction over it. Both parties concede that this court does not have general jurisdiction over the defendant because it has conducted no activities in this forum which can be deemed "substantial" or "continuous or systematic." "If ... the defendant's activities are not so pervasive as to subject him to general jurisdiction, the issue whether jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action." *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977). The test is whether (1) the non-resident defendant did some act or consummated some transaction with the forum or performed some act by which he purposefully availed himself of the privilege of conduct-

ing activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or results from the defendant's forum-related activities; (3) exercise of jurisdiction would be reasonable. *Id.*

### (1) *Did Commercial Bank Avail Itself of Benefits and Protections of California's Laws?*

■. In order to resolve this issue, we must be aware that this cause of action arose when CBK made its demand on the letter of credit. Thus, everything revolves around the letter of credit. CBK asserts that it did not purposefully avail itself of the privilege of doing business in California and thus did not invoke the benefits and protections of California's laws because it had no role in the selection of Chase Bank as the issuer of the letter of credit. Paccint, on the other hand, contends that CBK did invoke the benefits and protections of California's laws by involving itself in the letter of credit transaction with a California bank. Paccint notes further that the letter of credit is closely linked with this jurisdiction in that demand for payment must be made here and payment is to be made from an account with Chase's Los Angeles branch. Paccint cites *Wyle v. Bank Melli of Tehran, Iran,* 577 F.Supp. 1148 (N.D.Cal.1983) as support for its position.

In *Wyle,* a corporation, "PFEL," was engaged in shipping operations into the Port of Bushire, Iran. As a condition of carrying on these operations, the Ports and Shipping Organization of Bushire (PSO) required that PFEL maintain a bond in Iran to cover claims for lost or damaged cargo. There was an indemnity arrangement which was scrapped in favor of a new arrangement involving "back-to-back" arrangements like those in this case. PSO wanted a guarantee from an Iranian bank, Bank Melli. PFEL arranged a letter of credit from its bank, Bank of California in San Francisco, to indemnify Bank Melli in the event that PSO should call on Bank Melli's guarantee. Although not a carbon

copy of the arrangement in this case, it is sufficiently similar. In this case, CBK issued guarantees in KOC's and IHI's favor; Chase Bank issued a letter of credit in CBK's favor to cover the guarantee issued in IHI's behalf.

In *Wyle,* the dispute arose when Bank Melli made demand on Bank of California for payment of the full amount available under the letter of credit. The plaintiffs sued claiming that the demand was not based on bona fide claims for missing or damaged cargo, and that the defendants conspired to make a fraudulent demand on the letter of credit. In this case, Paccint claims that fraud underlies the CBK demand because the side agreement between Paccint and IHI prohibited IHI from making a demand on the guarantee unless KOC had also made a demand on its guarantee. There is no evidence that KOC made such a demand, thus IHI's demand is in violation of the side agreement. Paccint also contends that CBK knew IHI's demand was fraudulent and that CBK was motivated to make the demand on the letter of credit because the money to be paid out would go toward satisfying ILI's overdraft. With the factual similarities established, I will move on to the issue of jurisdiction.

In *Wyle,* Judge Peckham found that the "first and second *Data Disc* conditions [were] met ... by the letter of credit transaction itself." 577 F.Supp. at 1160. He noted that "[b]oth PSO and Bank Melli relied on the credit of a California bank in going forward with the cargo shipping and related indemnity agreements. Implicitly, they relied on their ability to enforce the obligation of Bank of California in a California court ...." *Id.* He hypothesized that had PSO and Bank Melli made legitimate claims and Bank Melli paid under its guarantee and sought to collect under the letter of credit, if Bank of California and PFEL made false representations as to the legitimacy of PSO's claim so that the bank would not have to pay on the letter of credit, they would have been subject to suit in California. Similarly, in this case, the letter of credit issued by Chase provided the security which allowed the transaction

to be consummated. If KOC had made a demand on its guarantee due to problems with the trucks and Commercial Bank paid out the sum, IHI would then make a demand on its guarantee which was secured by the letter of credit issued by Chase. Thus, if Paccint and Chase unlawfully resisted payment on the letter of credit they too would be subject to suit in California. CBK does not contend that it contemplated enforcing the letter of credit in Kuwait should it need to do so. Although *Wyle* is not precedent, Judge Peckham's analysis is wise and will be followed by this court.

In sum, then, CBK can be said to have consummated a transaction with this forum and invoked the benefits and protections of its laws. There is no doubt that this cause of action arose from that transaction. Thus, as in *Wyle,* the first two *Data Disc* factors are satisfied in this case.

(2) *Reasonableness of Exercising Jurisdiction.*

■ There are seven factors a court must consider when determining whether it would be reasonable to exercise jurisdiction; (1) the extent of the purposeful interjection into the forum state; (2) the burden on the defendants of defending in the forum; (3) the extent of the conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir.1981). All seven factors are satisfied in this case.

As to purposeful interjection, Paccint contends that CBK interjected itself into this jurisdiction by making a fraudulent demand for payment on Chase Bank International. In *Wyle, supra,* Judge Peckham noted that "[b]y accepting that one of the pillars of the indemnity arrangement was to be anchored in California, Bank Melli

may be said to have purposefully interjected itself." 577 F.Supp. at 1161. The same reasoning applies in this case. Also, Paccint's point that CBK interjected itself into the jurisdiction by making the demand is well taken.

There is undoubtedly a burden placed on CBK if it has to defend this suit in California. But as Paccint points out, the defendant knowingly involved itself in this transaction and injected itself into the jurisdiction. Transportation is available from Kuwait to California and the burden is not unreasonable in light of the circumstances.

There is no issue here as to sovereignty because CBK is privately owned and not an arm of the state.

Regarding the interest of the forum state, it seems clear that California has a strong interest in protecting Chase from fraud. The record makes it clear the problem can be most efficiently resolved here and that convenient and effective relief will be provided.

As to the existence of an alternative forum, there is no concrete evidence that one is available in Kuwait which would entertain actions for injunctive relief.

In sum, then, there is strong support for a finding that personal jurisdiction over CBK exists.

### B. *Preliminary injunction.*

■■■ In order to be granted a preliminary injunction, the moving party must demonstrate either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tip sharply in the movant's favor. *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir. 1980). CBK argues that Paccint has not demonstrated a likelihood of success on the merits because there is no showing that CBK knew of any fraud by IHI and without such knowledge the demand on the letter of credit was proper. CBK also argues that Paccint has failed to show a

possibility of irreparable harm. The court disagrees and finds that both prongs of the test for issuing an injunction have been satisfied.

CBK contends that it did not know of the side agreement between IHI and Paccint which prohibited IHI from making a demand on its guarantee unless KOC had made a similar demand on IHI. Paccint maintains that CBK should have known that IHI had no basis for making a good faith claim under the IHI guarantee because KOC did not make a claim under the KOC guarantees and CBK knew this. This presupposes, however, that CBK knew of the side agreement between IHI and Paccint when CBK made its demand for payment under the letter of credit. There is reason to believe that CBK did. Although CBK maintains it had no knowledge of the side agreement before or after making the demand on letter of credit, Richard Carey, CBK's General Manager, states in his second Affidavit that "CBK had no awareness of the alleged side agreement between Paccar and IHI prior to May 1, 1984." As Paccint noted during oral argument, the necessary inference is that CBK knew of the side agreement when the demand for payment under the letter of credit was made because the demand was made *on* May 1, 1984. CBK termed the statement made by Carey a "negative pregnant" and maintained it had no knowledge of the side agreement before or after the demand was made. The veracity of CBK's statement is doubtful indeed because it certainly knows of the side agreement now and yet is still making demands for payment by Chase. Even if CBK did not know of the side agreement, there still remains the question whether it knew IHI made false claims. Paccint maintains that CBK knew the IHI claims were false and CBK has not denied such knowledge. In this court's estimation, Paccint has demonstrated a likelihood of success on the merits.

Paccint has also satisfactorily demonstrated a possibility of irreparable harm. If CBK is allowed to draw on the letter of credit Paccint will be liable to Chase for

that amount. If the draw is fraudulent as alleged, Paccint will have to seek legal recourse against CBK and IHI. Paccint represents that IHI is bankrupt according to Kuwaiti law and it is questionable whether a judgment received in this court could be enforced. Resort to the Kuwait judicial system may not result in a more successful outcome either. These questions alone raise the prospect of irreparable injury.

An injunction is also appropriate under the second prong of the test: whether serious questions are raised going to the merits and the balance of hardships tip sharply in the moving party's favor. The discussion above regarding Paccint's demonstration of likelihood of success on the merits shows that serious questions are raised. Also, the facts of this case indicate that the balance of hardships tip sharply in Paccint's favor. The only real hardship that could be presented CBK is that it will not have the funds requested under the letter of credit if the payment is not made upon request. If the demand is not fraudulent, CBK would have been deprived of the funds for the duration of the injunction. Any inconvenience, however, can be soothed by monetary indemnification. On the other hand, if the demand is fraudulent and this court allows Chase to pay the amount demanded Paccint will be out a substantial amount of money and it may not have an adequate remedy against CBK and (or) IHI.

The court understands there is an arbitration proceeding set to take place in Geneva some time in the near future to determine the merits of Paccint's claims against IHI. A ruling by the arbitrator in that proceeding will probably have a significant bearing on this case. Accordingly, pending a decision by the arbitrator in the matter involving Paccint and IHI, the defendant, Commercial Bank of Kuwait, is enjoined from:

(1) making any demand for honor of, or any demand for final or conditional payment under or in connection with letter of credit No. 65393 issued by Chase Bank International to defendant Commercial Bank of Kuwait, S.A.K. for the account of PACCAR International, Inc.; and

(2) obtaining or accepting honor of, or final or conditional payment under or in connection with said letter of credit; and

(3) taking any action or making any effort to obtain, directly or indirectly, through notice, demand, request or any other form of communication or activity, honor of, or any payment under or in connection with, said letter of credit; and it is further

ORDERED that this preliminary injunction enjoin, in addition to the defendant Commercial Bank of Kuwait, S.A.K., its officers, directors, agents, servants, employees and attorneys, wherever located, as well as all other persons who receive, by personal service or otherwise, actual notice of this Order and who are or may be in active concert or participation with the foregoing or who may in any way aid or abet them in carrying out or attempting to carry out any of the above described actions or activities. Any bank to which this Order may apply is authorized to take whatever steps are appropriate to assure compliance with this Order by those persons affected by it. It is further ordered that the plaintiff provide security in the form of a security bond in the sum of $100,000.00, for the payment of such costs and damages as may be incurred or suffered by the defendant Commercial Bank of Kuwait, S.A.K. if it is found to have been wrongfully enjoined or restrained. This injunction will take effect upon the posting of such bond by Paccint and will remain in effect until the arbitrator's decision in the matter involving Paccint and IHI. When a decision is rendered, this court will entertain appropriate motions for a continuance of this injunction.

IT IS SO ORDERED.