**PACCAR INTERNATIONAL, INC.,**
**Plaintiff-Appellee,**

v.

**COMMERCIAL BANK OF KUWAIT,**
**S.A.K., Defendant-Appellant.**

**Nos. 84–6004, 84–6293.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1985.

Decided April 12, 1985.

As Amended April 17, 1985.

Lawrence W. Newman, Baker & McKenzie, New York City, for plaintiff-appellee.

C. Thorne Corse, San Francisco, Cal., for defendant-appellant.

Lawrence W. Dam, Lillick McHose & Charles, Stanley F. Farrar, Sullivan & Cromwell, Los Angeles, Cal., for amicus curiae.

Before CHAMBERS, BOOCHEVER and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Paccar International, Inc. ("Paccint") brought this action seeking to enjoin the Commercial Bank of Kuwait, S.A.K. ("CBK") from drawing on a letter of credit issued by the Los Angeles branch of Chase Bank International ("Chase"). The district court granted a preliminary injunction against CBK. CBK appeals, asserting that the district court lacked personal jurisdiction over CBK and that the district court erred in granting the preliminary injunction. We conclude that the district court lacked personal jurisdiction over CBK. Accordingly, we vacate the order granting the preliminary injunction.

## I

### BACKGROUND

Paccint is a Delaware corporation with its principal place of business in Bellevue, Washington. Paccint is in the business of distributing vehicles and equipment outside the United States. In 1982, the Kuwait Oil Company ("KOC") solicited bids for a contract to supply trucks and trailers. KOC sought bids only from corporations with a majority of Kuwaiti shareholders. Desiring to bid for the KOC contract, Paccint entered into a contract with IHI Kuwait Co. ("IHI"), a Kuwaiti corporation. Pursuant to the contract, IHI submitted a bid, which KOC accepted. Paccint agreed to supply the equipment to IHI for resale to KOC at a purchase price of $33,588,016. IHI received a commission of $3 million.

This case involves the financing arrangements made by IHI and Paccint. KOC required bank guarantees to secure IHI's performance under the contract. IHI arranged for its bank, CBK, to issue perform-

ance guarantees in favor of KOC in the total amount of $3,358,801 ("the KOC Guarantee"). CBK also issued a performance guarantee in favor of IHI to cover defaults by Paccint ("the IHI Guarantee"). Paccint arranged for Chase to issue a standby letter of credit in favor of CBK. The letter of credit provided that CBK could draw funds on nine days notice as reimbursement for any sums paid pursuant to the IHI Guarantee. In a side agreement, Paccint and IHI allegedly agreed that IHI would only demand funds under the IHI Guarantee when it was obligated to pay an equal or greater sum to KOC on account of Paccint's default.

In February 1984, IHI submitted a claim to Paccint in the amount of $1,492,566.60 for warranty work which IHI alleged that it had performed on the equipment delivered to KOC. After an investigation, Paccint concluded that IHI's claim was significantly overstated. Accordingly, Paccint rejected IHI's claim.[1] On May 1, 1984, CBK gave notice to Chase of its intention to draw $1,492,566.60 under the letter of credit. After Chase notified Paccint of CBK's demand, Paccint filed suit to compel CBK to withdraw its demand for payment.

Paccint claims that CBK's attempt to draw under the letter of credit was fraudulent because CBK knew that IHI's claims were false. Paccint also contends that CBK knew that IHI was insolvent and intended to use the letter of credit as a means of obtaining funds to satisfy IHI's obligations to CBK. On May 7, 1984, the district court issued a temporary restraining order. On May 25, 1984, the district court granted a preliminary injunction against CBK. 587 F.Supp. 783 (C.D.Cal. 1984). CBK filed a timely notice of appeal from the granting of the preliminary injunction.

## II

### STATUTORY JURISDICTIONAL REQUIREMENTS

Our analysis of the jurisdictional question in this case requires us to consider the

---

**1.** On June 8, 1984, Paccint commenced arbitration proceedings against IHI in Geneva, Switzerland. Those proceedings do not affect this litigation.

California statutes relating to personal jurisdiction.[2] The California long-arm statute provides that California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal.Civ.Proc.Code § 410.10. Section 410.10 has been interpreted as giving California courts jurisdiction coextensive with federal due process. *E.g., Hunt v. Erie Insurance Group,* 728 F.2d 1244, 1246 (9th Cir.1984); *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1286 (9th Cir.1977). As a result, the distinction between federal due process and California due process does not affect the outcome of this appeal. *See* 4 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1075, at 150 (Supp.1984).

## III

### CBK'S CONTACTS WITH CALIFORNIA

Paccint claims that the district court has "specific jurisdiction" over CBK.[3] In *Data Disc,* we held that a plaintiff attempting to establish specific jurisdiction must show that three requirements are satisfied:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related

activities. (3) Exercise of jurisdiction must be reasonable.

557 F.2d at 1287; *see Cubbage v. Merchent,* 744 F.2d 665, 668 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1984). The first two requirements under *Data Disc* are closely related because they focus on the relationship of the defendant and the claim to the forum state. Once the defendant's contacts with the forum state are found to satisfy the first two requirements, those contacts must be evaluated under the third requirement.[4]

■ For purposes of specific jurisdiction, it is undisputed that CBK has only two contacts with California: (1) the existence of the letter of credit, and (2) CBK's attempt to draw under the letter of credit. This suit "arises out of or results from" those two contacts. Accordingly, either contact would satisfy the second requirement. The critical inquiry is whether either of the contacts satisfies the first requirement.

### A. *The Existence of the Letter of Credit*

The district court found that CBK's status as beneficiary of the letter of credit was sufficient to uphold jurisdiction, relying on *Wyle v. Bank Melli,* 577 F.Supp. 1148 (N.D.Cal.1983). The facts in *Wyle* are virtually identical to those in this case. The Bank of California issued a standby letter of credit with Bank Melli, an Iranian bank, as beneficiary. The letter of credit

---

**2.** We follow the *Arrowsmith* rule, which requires a federal court in a diversity case to apply the long-arm statute of the state in which it sits. *Hunt v. Erie Insurance Group,* 728 F.2d 1244, 1246 (9th Cir.1984); *see Arrowsmith v. United Press International,* 320 F.2d 219 (2d Cir. 1963); 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1075 (1969).

**3.** The Supreme Court distinguishes between "general jurisdiction" and "specific jurisdiction." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984). The parties agree that California cannot assert general jurisdiction over CBK. *See id.* 104 S.Ct. at 1873; *Bank of America v. Whitney Central National Bank,* 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594 (1923).

Instead, Paccint contends that California has specific jurisdiction over CBK because this is "a suit arising out of or related to the defendant's contacts with the forum." *Hall,* 104 S.Ct. at 1872 n. 8.

**4.** The existence of personal jurisdiction presents a mixed question of law and fact. *See Flynt Distributing Co. v. Harvey,* 734 F.2d 1389, 1392 (9th Cir.1984); *Data Disc,* 557 F.2d at 1284. The party seeking to invoke jurisdiction must plead and prove adequate facts to establish jurisdiction. *Harvey,* 734 F.2d at 1389. The jurisdictional facts are undisputed at this stage, so that only questions of law are before us. Accordingly, we review the district court's assertion of jurisdiction de novo. *See Wallin v. Commissioner,* 744 F.2d 674, 676 (9th Cir.1984).

secured certain obligations of Pacific Far East Lines ("PFEL"), a California corporation, to PSO, an Iranian corporation. PSO demanded payment from Bank Melli, which drew on the letter of credit. A representative of PFEL sought an injunction, which the district court granted. In upholding personal jurisdiction, the district court offered the following analysis:

> The first and second *Data Disc* conditions are met here by the letter of credit transaction itself. Both PSO and Bank Melli relied on the credit of a California bank in going forward with the cargo shipping and related indemnity agreements. Implicitly, they relied on their ability to enforce the obligation of Bank of California in a California court, as the following hypothetical illustrates: Suppose PSO had made legitimate claims and Bank Melli had paid under its guarantee and sought to collect under the letter of credit, but PFEL had induced Bank of California not to pay by false representations that PSO's claims were fraudulent. Bank of California and PFEL would have been subject to suit here. Indeed, defendants argue for another purpose—limiting the relief available—that California law governs this letter of credit transaction.

*Id.* at 1160. Paccint argues that *Wyle* is persuasive authority in favor of upholding jurisdiction.[5]

■ We decline to follow *Wyle* for three reasons. First, *Wyle* is contrary to the rule that the mere existence of a contract is insufficient to confer personal jurisdiction.

We have refused, for example, to uphold personal jurisdiction over a foreign corporation, which contracted with a California corporation, when the record revealed that the defendant "has not performed any act relating to the contract at issue by which it purposefully availed itself of the privilege of conducting business in California." *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica,* 614 F.2d 1247, 1254 (9th Cir.1980). If we accepted the analysis in *Wyle,* CBK could be forced to defend a suit in California even though it had never committed an affirmative act in California. Such a result would deprive CBK of due process. *See Thos. P. Gonzalez,* 614 F.2d at 1254.

Second, the analysis in *Wyle* assumes that the parties in a letter of credit transaction rely on their ability to enforce the letter of credit in a particular forum. In fact, the parties may anticipate enforcing the letter of credit in any one of several forums. In this case, for example, CBK could have filed suit against Paccint and Chase in Kuwait, California, Delaware, Washington, or New York. Accordingly, the factual premise of *Wyle* is suspect.[6]

■ Third, the analysis in *Wyle* does not apply to the facts of this case. Paccint has not alleged that CBK participated in the selection of Chase or the decision to employ a California bank. In an affidavit, Richard Carey, who is the general manager of CBK, stated that CBK did not participate in the selection of Chase. Accordingly, the record does not support the conclusion that CBK purposefully availed itself of the priv-

---

**5.** CBK and the California Bankers Association, as amicus curiae, contend that *Wyle* was a product of the strained relations between the United States and Iran. CBK and the California Bankers Association urge us to follow the decisions of the California courts, which have declined to sustain jurisdiction in similar cases. *E.g., Thomas J. Palmer, Inc. v. Turkiye Is Bankasi A.S.,* 105 Cal.App.3d 135, 164 Cal.Rptr. 181 (1980); *accord Faravelli v. Bankers Trust Co.,* 59 N.Y.2d 615, 463 N.Y.S.2d 194, 449 N.E.2d 1272 (1983), *aff'g* 85 A.D.2d 335, 447 N.Y.S.2d 962 (1982); *Citibank, N.A. v. Klein,* 396 So.2d 763 (Fla.Dist.Ct.App.1981).

**6.** While it is true that California law would apply, that fact is of little consequence. The

fact that a contract is governed by the law of a particular state does not establish that the parties have purposefully availed themselves of the privilege of conducting business in that state. Many contracts, for instance, contain choice of law provisions. Such provisions are irrelevant to analysis under the first two *Data Disc* requirements. To the extent that the choice of law is relevant, it is considered only in assessing the reasonableness of asserting jurisdiction, which falls under the third *Data Disc* requirement. *Cf. Cubbage,* 744 F.2d at 670 (noting that "choice of law is a separate inquiry from that of personal jurisdiction").

ilege of conducting business in California by becoming the beneficiary of the letter of credit.

### B. *CBK's Attempt to Draw Under the Letter of Credit*

■ Paccint contends that CBK submitted to the jurisdiction of the California courts by attempting to draw under the letter of credit. Specifically, Paccint argues that this case is controlled by the rules relating to intentional torts. The commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements under *Data Disc. E.g., Data Disc,* 557 F.2d at 1288. A tortious act, standing alone, can satisfy all three requirements under *Data Disc* if the act is aimed at a resident of the state or has effects in the state. *E.g., Calder v. Jones,* — U.S. ——, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984); *Data Disc,* 557 F.2d at 1288. Paccint contends that CBK committed an intentional fraudulent act in California by demanding payment from Chase.[7]

■ We conclude that CBK's allegedly fraudulent demand for payment from Chase is sufficient to satisfy the first two requirements under *Data Disc.* As we noted in *Data Disc,* "[t]he inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement." 557 F.2d at 1288. Paccint alleges that CBK's demand for payment in California induced reliance on the part of Chase. This allegation satisfies the first two requirements under *Data Disc.*

■ Paccint, however, argues that CBK committed an intentional tort that was aimed at a California resident and had effects in California. We disagree. Even assuming that CBK's actions were fraudulent, the victim of the fraud was Paccint,

which is a Delaware corporation with its principal place of business in Bellevue, Washington. Paccint has not alleged that it does business in California. While Chase is a California resident, Chase was not defrauded. To illustrate this point, suppose that Chase had filed suit against CBK for fraud after allowing CBK to draw under the letter of credit. The tort of fraudulent misrepresentation has five elements: (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Watts v. Crocker-Citizens National Bank,* 132 Cal. App.3d 516, 522 n. 2, 183 Cal.Rptr. 304, 307 n. 2 (1982); *Prosser and Keeton on the Law of Torts* § 105, at 728 (W. Keeton 5th ed. 1984). The first four elements are present, but the fifth is not. The issuer of a letter of credit "assumes no liability or responsibility for the genuineness, falsification or effect of any document which appears on ... examination to be regular on its face." Cal.Com.Code § 5109(2). In fact, the issuer must honor a demand for payment that complies with the terms of the letter of credit. *Id.* § 5114(1). Even if the issuer is notified that the transaction is fraudulent, it may honor the demand for payment in good faith. *Id.* § 5114(2)(b). Chase received no such notice in this case. Unless the issuer has been notified of the fraudulent nature of the transaction and acts in bad faith, the customer must immediately reimburse the issuer. *Id.* § 5114(3). As a result, Chase would not incur actual damages from CBK's fraudulent act. Accordingly, Chase could not maintain an action against CBK for fraud. *See Gold v. Los Angeles Democratic League,* 49 Cal. App.3d 365, 374, 122 Cal.Rptr. 732, 739 (1975).

In sum, we find that the first two requirements under *Data Disc* are satisfied by the allegedly fraudulent demand for payment.[8] We do not, however, find that

---

**7.** Paccint also argues that IHI's fraudulent claims gave rise to a cause of action for fraud in the transaction. While Paccint may be correct, this claim does not charge CBK with the commission of an intentional tort. Accordingly,

personal jurisdiction over CBK cannot be upheld on the basis of fraud in the transaction.

**8.** Paccint also suggests that CBK purposefully availed itself of the privilege of conducting business in California by attempting to exercise its

Paccint's allegations show an intentional tort with effects in California. We now turn to the third requirement under *Data Disc*, under which we assess the reasonableness of exercising jurisdiction on the basis of CBK's allegedly fraudulent demand for payment.

## IV

### REASONABLENESS

In analyzing the reasonableness of exercising jurisdiction, we apply seven factors: (A) the extent of the purposeful interjection into the forum state, (B) the burden on the defendant of defending in the forum, (C) the extent of conflict with the sovereignty of defendant's state, (D) the forum state's interest in adjudicating the dispute, (E) the most efficient judicial resolution of the controversy, (F) the importance of the forum to plaintiff's interest in convenient and effective relief, and (G) the existence of an alternative forum. *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir.1981) (citations omitted).

### A. *The Extent of the Purposeful Interjection into the Forum State*

■ CBK's contacts with California are minimal. CBK's only purposeful interjection into California was the allegedly fraudulent demand for payment. Because that act was aimed at a nonresident, we conclude that the extent of CBK's purposeful interjection into California was negligible. *Cf. Olsen ex rel. Sheldon v. Government of Mexico*, 729 F.2d 641, 649 (9th Cir.) (finding a "substantial" interjection into California when an aircraft crashed inside the California border), *cert. denied*, —— U.S. ——, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984).

### B. *The Burden on the Defendant of Defending in the Forum*

■ Although transportation is less onerous today, there can be little doubt that CBK would bear a heavy burden if it is required to defend this action in California. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (noting that the burden on the defendant is "always a primary concern"). Although the district court noted that transportation is available from Kuwait to California, the burden on CBK supports a finding that exercising jurisdiction is unreasonable.

### C. *The Extent of Conflict with the Sovereignty of Defendant's State*

■ The district court found that this factor is inapplicable because "CBK is privately owned and not an arm of the state." Paccint contends that the district court was correct because this case lacks foreign policy overtones. Both the district court and Paccint have misconstrued this factor. One of the goals of minimum contacts analysis is "to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564. By asserting jurisdiction of CBK, the district court interfered with the sovereignty of Kuwait and the right of Kuwaiti courts to resolve disputes involving Kuwaiti corporations.

### D. *The Forum State's Interest in Adjudicating the Dispute*

■ Paccint is not a California corporation, and Chase has not been defrauded. Moreover, California has no special interest in regulating banks that are not chartered under California law. *See Turkiye Is Bankasi*, 105 Cal.App.3d at 154, 164 Cal.Rptr. at 192. Accordingly, California has little or no interest in adjudicating this dispute.

### E. *The Most Efficient Judicial Resolution of the Controversy*

■ The key issues in this case are whether IHI's claims were fraudulent and

---

contractual right to payment under the letter of credit. In the absence of any evidence that CBK participated in the selection of a California bank as issuer of the letter of credit, we reject that argument. *Cf. Hall,* 104 S.Ct. at 1873 (holding that the acceptance of checks drawn on a bank in the forum state did not give the forum state general jurisdiction over the defendant).

whether CBK knew that those claims were fraudulent. Most of the evidence with regard to those issues is located in Kuwait. As a result, California is a poor choice as a forum to resolve this dispute.

### F. The Importance of the Forum to Plaintiff's Interest in Convenient and Effective Relief

■ Upholding jurisdiction in California would allow Paccint to receive more convenient relief. Paccint, however, voluntarily elected to do business in Kuwait. Paccint has not shown that it cannot receive effective relief in Kuwait. Although Paccint asserts that it could not enforce a Kuwaiti injunction in California, that fact is irrelevant. If Paccint received an injunction from a Kuwaiti court, it could enforce the injunction in Kuwait.

### G. The Existence of an Alternative Forum

■ Paccint asserts that Kuwaiti courts do not allow pretrial discovery and limit the questioning of witnesses at trial. Even if Paccint is correct, those limitations do not negate the existence of an alternative forum. The district court found that "there is no concrete evidence that [an alternative forum] is available in Kuwait which would entertain actions for injunctive relief." The burden of proof, however, rests with Paccint. See Olson, 729 F.2d at 651 (holding that the defendants failed to carry their burden of proof with respect to this factor by offering proof of Mexican law). Accordingly, this factor favors finding that exercising jurisdiction is unreasonable.

### H. Summary

Considered together, the seven factors favor finding that exercising jurisdiction in California would be unreasonable. The third requirement under Data Disc has therefore not been satisfied. Accordingly,

---

9. In light of our disposition of this case, we do not reach CBK's contentions regarding the availability of preliminary injunction relief under the facts of this case.

we conclude that the district court lacked personal jurisdiction over CBK.[9]

## V

## CONCLUSION

The order granting the preliminary injunction is VACATED. The case is REMANDED to the district court with instructions to dismiss the complaint for lack of personal jurisdiction.[10]

---

10. Paccint's motion to dismiss or, in the alternative, to strike portions of CBK's brief is denied.