**CALIFORNIA SOFTWARE INCORPORATED, a California corporation; and Reliacomm Corporation, Plaintiffs,**

v.

**RELIABILITY RESEARCH, INC., a Nevada corporation; James J. White; and Larry Martin, Defendants.**

No. CV–85–6569–AHS.

United States District Court,
C.D. California.

April 2, 1986.

Donald S. Burris, Sarah A. Hiestand, Barton S. Selden, Burris & Anthony, Santa Monica, Cal., for plaintiffs.

Michael A. Painter, Henry W. Holmes, Jr., J. Thomas Cairns, Jr., Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for defendants.

## OPINION AND ORDER ON MOTION TO DISMISS

STOTLER, District Judge.

On October 4, 1985, plaintiffs California Software, Inc. and Reliacomm, Inc. filed a complaint alleging that defendants Reliability Research, Inc. (hereinafter referred to as "RRI"), James White and Larry Martin made false statements through the use of the telephone, the mails, and a nationwide computer network concerning plaintiffs' right to market a software program. Defendants moved to dismiss the complaint for lack of personal jurisdiction. The issue presented is whether defendants' utilization of the foregoing means of communicating with plaintiffs' prospective customers both in and out of California for the purpose stated supports an exercise of jurisdiction in this forum. By this Order, the Court finds limited jurisdiction over two of these defendants. Accordingly, defendants RRI and White's motion is denied and defendant Martin's motion is granted.

## I. BACKGROUND

In 1985, Reliacomm employed California Software to provide marketing and consulting services for a new system of computer software known as resCue/MVS ("the

product"). Under the employment contract, California Software agreed to promote and sublicense the product on behalf of Reliacomm. Both plaintiffs are California corporations having their principal places of business in California.

Reliability Research, Inc. ("RRI"), a Nevada corporation with its principal place of business in Vermont, has as its sole business the development of a single software program. RRI granted UCCEL,[1] a Texas corporation, an exclusive license to market the software. RRI employs two individuals, Larry Martin, a citizen of Connecticut, the corporation's president and vice-president, and James White, a citizen of Vermont, its treasurer.

Plaintiffs brought this action as a result of defendants' allegedly tortious communications with certain business entities throughout the United States and Canada. Their claims for intentional interference with prospective economic advantage, slander of title, libel, slander, civil conspiracy, unfair competition, and intentional interference with their right to pursue a lawful business arise out of two sets of communications made by defendant White with potential purchasers of the resCue/MVS software.

First, White communicated directly with the following three California residents, each of whom had seriously considered sublicensing plaintiffs' software: (1) Gibraltar Savings & Loan in Los Angeles, which received a letter dated May 3, 1985; (2) the Atlantic Richfield Company (ARCO) in Los Angeles, which received a telephone call in the Spring of 1985; and (3) Southern California Gas Company in Monterey Park, which received communications by both the mail and the telephone in the Fall of 1985. White told these companies of a title dispute over the product in a New York action and that, if successful, RRI would cancel all sublicenses to the product marketed by California Software and seek damages from plaintiffs and their sublicensees.

Second, on July 23, 1985, White placed a message on a nationally disseminated computer based information service known as the Computer Reliability Forum (the "CRF"), which is operated by defendants. Operators of large computer installations, having a license from UCCEL, utilize the CRF to share information regarding computer hardware and software. Although one may use the CRF to respond to a specific inquiry, the system acts as a bulletin board, its messages being available and visible to all its users.

White's CRF message stated that RRI was currently attempting to establish its ownership of the resCue/MVS software in a lawsuit filed in New York against California Software. The message further stated that RRI would hold any licensee of the product financially responsible for its use if RRI prevailed in the lawsuit.[2] White's message was received by at least three users of the CRF network: Pacific Northwest Bell in the State of Washington; Marine Midland Bank in Buffalo, New York; and Canada Trust in Ontario, Canada. White placed the message on the CRF in response to inquiries made by these prospective purchasers of the product. The message was also made available to ARCO in California, although no evidence indicates that this CRF message influenced

---

1. UCCEL is not a defendant in this action.

2. On July 23, 1985, James White sent the following message over the CRF to Wayne Holmes of Pacific Northwest Bell:

> Wayne, Rescue/mvs is a program developed by Larry Feinberg and licenced [sic] to Cal. Software. Mr. Feinberg is the European R+ Licensee and under the terms of his license anything that he developes [sic] in the area of computer reliability is the property of RRI. In order to avoid this restriction Mr. Feinberg transfered the R+ license to a corporate shell and claimed this freed him to bypass terms of

license agreement. [O]ur Lawyers are pursuing this matter in the court system ... If our claim is upheld then we will terminate any license issued by Cal. Software and hold the licensee and licensor financially responsible for missuse [sic] of our property.... I know that Mel Shutt went through this matter with ARCO lawyers and they advised him to stay away from tainted goods.

Wayne Holmes immediately replied:

> Thanks for the warning.... I will pass on the info to our legal types. I am sure they will agree with ARCO.

ARCO's decision not to purchase the product.[3]

Plaintiffs claim that these communications contained false and malicious information which discouraged those who received the messages from purchasing plaintiffs' product. Prior to White's interference, the prospective customers had expressed interest in the resCue/MVS software.

## II. DISCUSSION

This Court has diversity jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332. In diversity actions, California courts exert personal jurisdiction over non-resident defendants to the fullest extent permissible under the Fourteenth Amendment to the U.S. Constitution. Cal.Code of Civ.Proc. § 410.10. Thus, it must be determined whether defendants have sufficient contacts with the State of California to satisfy due process requirements such that it is appropriate to exercise general or limited jurisdiction. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977).[4]

In order for this Court to assert jurisdiction, the non-resident defendants' contacts with the forum state, though minimal, must be of such quality and quantity that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed.2d 95 (1945). A finding of minimum contacts satisfies the due process requirement that the non-resident defendants have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Shaffer v.*

*Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in judgment); *Burger King Corp. v. Rudzewicz*, —— U.S. ——, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). The defendants' "conduct and connection with the forum State [must be] such that [they] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In the Ninth Circuit, a plaintiff bears the burden of establishing jurisdictional facts, although the plaintiff's burden may vary according to the nature of the proceeding and the type of evidence the Court permits the plaintiff to present. *Data Disc*, 557 F.2d at 1285. At this preliminary stage of the proceedings, before the parties have undertaken discovery, a plaintiff need not establish jurisdiction by a preponderance of the evidence but may merely set forth a prima facie showing based on the affidavits of knowledgeable witnesses. *Id.*

### A. General Jurisdiction

Plaintiffs failed to meet their burden in demonstrating general jurisdiction over any defendant. A defendant may be haled into a forum state's courts to defend against causes of action unrelated to his conduct there if his activities in the state are "substantial" or "continuous and systematic." *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446–47, 72 S.Ct. 413, 418–19, 96 L.Ed. 485 (1952); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868,

---

**3.** ARCO, a user of the CRF, placed the following message on the CRF system on July 30, 1985:

Wayne. I was wondering when this subject would show up here on CRF. First of all the product appears to ... work, and it looks real good. On the downside there is a definite legal dispute that the court will have to decide.... On the other side of the coin, I asked the Calif. software rep if there is any legal problems with MVS/Rescue and he said NO, as it is totally different.... I have probably said too much already so I will shut up. Mel.

**4.** In most jurisdictions, the court's inquiry into the propriety of exercising jurisdiction in a particular case turns on two independent considerations: whether the forum's long-arm statute confers jurisdiction over the non-resident defendants and whether such jurisdiction accords with principles of due process. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1286 (9th Cir.1977). The California long-arm statute, however, confers jurisdiction coextensive with that permitted by the Due Process Clause. *Id.; Cubbage v. Merchant*, 744 F.2d 665, 667 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985).

1872, 80 L.Ed.2d 404 (1984); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 413 (9th Cir.1977); *Cubbage v. Merchent*, 744 F.2d 665, 669 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985).

■ The evidence submitted indicates that neither the corporate defendant nor the two individual defendants maintain sufficient contacts with the State of California to support a finding of general jurisdiction. RRI is not licensed to do business in California and has no offices, agents, employees, telephone listings, bank accounts, or property within the State. Admittedly, RRI is a user of the CRF network and presumably maintains regular communications with California users. The mere act of transmitting information through the use of interstate communication facilities is not, however, sufficient to establish jurisdiction over the sender. *Thomas P. Gonzalez v. Consejo Nacional de Produccion de Costa Rica,* 614 F.2d 1247, 1254 (9th Cir.1980).

### B. *Limited Jurisdiction*

■ On the other hand, this Court may assert limited jurisdiction over the non-resident defendants if their activities in the forum give rise to or are related to the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872. The Court's inquiry must focus on the "relationship among the defendant, the forum, and the litigation." *Shaffer,* 433 U.S. at 204, 97 S.Ct. at 2580. In examining this relationship, the Ninth Circuit applies the following three-prong test to evaluate whether the nature and quality of those contacts justify the assertion of limited jurisdiction:

1. The non-resident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the protections and benefits of its laws.
2. The claim must be one which arises out of or results from the defendant's forum-related activities.
3. Exercise of jurisdiction must be reasonable.

*Data Disc,* 557 F.2d at 1287. In *Data Disc* the Court found that defendant's intentional misrepresentation made over the telephone from Virginia induced reliance by the plaintiff in California. Because the cause of action arose out of that inducement, the telephone call sufficed to satisfy the first two prongs of the *Data Disc* test. *Data Disc,* 557 F.2d at 1288; *Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.,* 757 F.2d 1058, 1064 (9th Cir. 1985) ("[t]he commission of an intentional tort within a state is a purposeful act that will satisfy the first two requirements under *Data Disc*"). In the present case, defendants RRI and White's intentional conduct which gives rise to this litigation justifies assertion of limited jurisdiction over those two defendants.

■ As *Data Disc* itself demonstrates, a Court may assert jurisdiction over defendants who conduct their activities outside the physical boundaries of the forum state. In *Burger King, Corp. v. Rudzewicz,* the Supreme Court observed:

> [j]urisdiction ... may not be avoided merely because the defendant did not physically enter the forum State.... [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State.... So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. *Keeton v. Hustler Magazine,* [citations]; see also *Calder v. Jones,* [citations].

*Burger King Corp. v. Rudzewicz,* —— U.S. at ——, 105 S.Ct. at 2184. Thus, the defendants' lack of physical contacts with the forum does not bar the assertion of limited jurisdiction over non-residents.

In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) the Supreme Court held that a California court could properly assert jurisdiction over non-

resident defendants whose intentional conduct, though out of state, was calculated to cause injury in the forum State. The *Calder* defendants, who lived and worked in Florida, wrote and edited an allegedly libelous story drawn from California sources and circulated in California. "Jurisdiction over petitioners is ... proper in California based on the 'effects' of their Florida conduct in California." *Calder*, 465 U.S. at 789, 104 S.Ct. at 1487. The Court found that the petitioners knew that the respondent would bear the brunt of the injury in California where she worked and lived, and, on that basis, the petitioners should have anticipated being haled into court there to answer for the truth of their statements. *Id.* *See also Keeton v. Hustler Magazine*, 465 U.S. 770, 780–81, 104 S.Ct. 1473, 1481–82, 79 L.Ed.2d 790 (1984) (where defendant circulates 10–15,000 magazines per month in a state, it must reasonably anticipate answering for the truth of its publications there, even though the plaintiff does not reside in the forum state).

■ *Burger King*, *Calder*, and *Keeton* each involved intentional, out-of-state conduct directed at the forum state. A defendant who purposefully directs his actions at a resident of the forum has "fair warning" that he may have to litigate there. *Keeton*, 465 U.S. at 774, 104 S.Ct. at 1478. By contrast, random, isolated or fortuitous contacts or the effects of undirected negligence do not justify the assertion of limited jurisdiction. *Id.* For example, in *World-Wide Volkswagen*, 444 U.S. at 298, 100 S.Ct. at 567–68, the Supreme Court held that a New York car dealer could not anticipate being haled into court in Oklahoma since he sold no cars there, even though it was foreseeable that one of the dealer's customers might drive to distant states. Unilateral actions by the plaintiff or a third party cannot subject an out-of-state defendant to jurisdiction by the forum state. Where, however, the defendants expressly aim their conduct, and direct the injury flowing therefrom, at a resident in the forum state, the defendants should anticipate answering for their conduct in the forum.

### 1. Communications by Mail to California Residents

■ In the present case, both sets of communications by defendant White subject himself and RRI to the jurisdiction of this Court. First, White contacted three California residents and allegedly employed defamatory statements to dissuade them from purchasing plaintiffs' software. Such conduct clearly falls within the *Calder-Data Disc* test. White's statements influenced the receiver's conduct in the State of California, as in *Data Disc*, and caused injury there, as in *Calder*. Plaintiffs' causes of action arise out of statements directed to Californians (ARCO, Gibraltar, and Southern California Gas Company) and expressly aimed at injuring California residents (plaintiffs). Given the purposeful nature of White's conduct, he should have foreseen answering for the effects of his communications in California. *See Calder*, *supra;* *World-Wide Volkswagen, supra;* and *Data Disc, supra.* Jurisdiction based on these direct contacts is, therefore, reasonable.

### 2. Communications Over the CRF to Non-California Residents

#### a. The First Two Prongs of the Data Disc Test

■ This Court may also assert limited jurisdiction over defendants White and RRI as a result of the communications made through the CRF network. Defendants made tortious statements which, though directed at third persons outside California, were expressly calculated to cause injury in California. *Calder*, 465 U.S. at 791, 104 S.Ct. at 1488. As in *Calder*, the defendants knew that plaintiffs would feel the brunt of the injury, i.e., the lost income, in California.

It is significant that defendants acted intentionally. Plaintiffs do not charge defendants with untargeted negligence, the result of which fortuitously injured plaintiffs. Rather, defendants allegedly intentionally manipulated third persons to interrupt their plans to purchase plaintiffs' product. Although the unilateral activity

of the plaintiff or a third person cannot subject a non-resident defendant to the forum state's jurisdiction, *see World-Wide Volkswagen, supra; Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), the recipients of White's CRF message did not act unforeseeably or unilaterally. As a consequence of White's influence, they acted as conduits for defendants' express intention to injure California residents by diminishing plaintiffs' business. Accordingly, such intentional "manipulation" of third persons who thereby refrain from consummating a contemplated transaction in California constitutes a forum-related activity by the defendants. As such, they subject themselves to the laws of the State of California and avail themselves of the privilege of doing business there. This intentional tortious contact, which gives rise to this litigation, satisfies the first two prongs of the *Data Disc* test. *See Data Disc, supra; Paccar, supra; Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) ("there [must] be some act by which ... defendant purposefully avails itself of the privilege of conducting activities within the forum State").

■ The fact that defendants directed their conduct through third parties does not insulate them from jurisdiction when it is the defendants' own activity that creates the injury in the forum state. The recipients of White's message acted, in a sense, as RRI's alter ego, deflecting business away from California. *See Burger King,* —— U.S. at ——, 105 S.Ct. at 2183–84 ("[j]urisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State") (emphasis in original).[5] Not only did defendants intend that these third parties act in such a manner, but they anticipated benefitting therefrom by maintaining their customers and possibly obtaining new ones. *Burger King,* —— U.S. at ——, 105 S.Ct. at 2183 ("where individuals 'purposefully de-

rive benefit' from their interstate activities [citation] it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities"); *Kulko,* 436 U.S. at 96, 98 S.Ct. at 1699.

Because defendants intentionally influenced third parties to injure the California plaintiffs, defendants should have foreseen answering for the veracity of their statements and the propriety of their conduct in California. "The foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. *See also Burger King,* —— U.S. at ——, 105 S.Ct. at 2183 (the foreseeability of causing injury in another state is not a 'sufficient benchmark' for exercising personal jurisdiction); *Calder,* 465 U.S. at 789–90, 104 S.Ct. at 1487.

This result finds support in a recent Fourth Circuit decision. In *Blue Ridge Bank v. Veribanc, Inc.,* 755 F.2d 371 (4th Cir.1985), the Court found that a corporation supplying allegedly libelous material to a syndicated columnist on condition that it receive credit in any article written by the columnist should have reasonably foreseen being haled into court in any jurisdiction in which the article appeared. The corporate defendant expected to receive new business from the article. *Id.* at 374. Likewise, defendants here gave libelous information, from which they benefitted directly, to a third party and should have reasonably anticipated being haled into court in the jurisdiction where the injury flowing from that information occurred. *See also Asahi Metal Industry Co., Ltd. v. Superior Court,* 39 Cal.3d 35, 216 Cal.Rptr. 385, 702 P.2d 543 (1985), *cert. granted* —— U.S. ——, 106 S.Ct. 1258, 89 L.Ed.2d 569 (1986) (a component parts manufacturer intentionally selling its products to another manufacturer whom it knows will incorporate the compo-

---

5. *But see Reuber v. United States,* 750 F.2d 1039, 1050 (D.C.Cir.1984) (defendant sent a letter to a narrow class of people in Maryland and could not reasonably anticipate being haled into court in the District of Columbia when the letter fortuitously reached D.C.; defendants' conduct was not aimed at D.C., although it may have caused harm there).

nents into a finished product sold in the forum state subjects itself to the jurisdiction of the forum state).

Defendants argue that, although they acted intentionally, they merely responded to inquiries made through the CRF, thereby distinguishing this case from *Calder.* The conversational format, however, does not affect the jurisdictional analysis. Defendants intentionally responded to the inquiries with allegedly libelous statements and economic threats directed at plaintiffs in California. As explained above, this Court's inquiry must focus on the defendants' actions and not the independent conduct of a third party. *Shaffer,* 433 U.S. at 204, 97 S.Ct. at 2579–80; *World-Wide Volkswagen, supra. Compare Paccar,* 757 F.2d at 1063 (mere existence of a contract without commission of affirmative action in the forum is not sufficient to establish limited jurisdiction).

Not only did defendants act intentionally but, by communicating through the CRF network, they made their messages available to an audience wider than those requesting the information. Explaining the expansion of traditional notions of personal jurisdiction, the Supreme Court wrote almost thirty years ago:

> Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines.

*McGee v. International Life Insurance Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). This observation is just as applicable today as it was in 1957. Through the use of computers, corporations can now transact business and communicate with individuals in several states simultaneously. Unlike communication by mail or telephone, messages sent through computers are available to the recipient and anyone else who may be watching. Thus, while modern technology has made nationwide commercial transactions simpler and more feasible, even for small businesses, it must broaden correspondingly the permissible scope of jurisdiction exercisable by the courts.

### b. *The Third Prong of the Data Disc Test*

Finally, this Court's assertion of limited jurisdiction over the defendants in relation to their communication over the CRF satisfies the requirement of reasonableness under *Data Disc.* Recognizing that the courts cannot apply an objective test to determine whether the assertion of jurisdiction is reasonable under the minimum contacts analysis of *International Shoe,* the Ninth Circuit has identified the following seven factors which might, in a particular case, assist in assessing the reasonableness of asserting jurisdiction:

> (A) the extent of the purposeful interjection into the forum state; (B) the burden on the defendant of defending in the forum; (C) the extent of conflict with the sovereignty of defendant's state; (D) the forum state's interest in adjudicating the dispute; (E) the most efficient judicial resolution of the controversy; (F) the importance of the forum to plaintiff's interest in convenient and effective relief; and (G) the existence of an alternative forum.

*Insurance Company of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir.1981) (citations omitted); *Cubbage,* 744 F.2d at 670; *Pacific Atlantic Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1329–1331 (9th Cir.1985). The relevant factors bearing on reasonableness here dictate that this Court find limited jurisdiction.

The State of California has a strong interest in protecting the rights of its injured citizens. Plaintiffs are resident corporations which felt the brunt of the harm from defendants' out-of-state acts in California. In *Keeton* the Supreme Court recognized the interest of the State of New

Hampshire in protecting non-resident plaintiffs from the effects of defamatory statements. That interest is even stronger in a case involving resident plaintiffs. *Veribanc,* 755 F.2d at 374. *See also Keeton, supra; Calder, supra.* It would be both unfair, in light of the forum-related activity, and inefficient to require plaintiffs who have suffered an economic injury as a result of defendants' intentional conduct to sue in defendants' home states (Nevada and Vermont) or in the three jurisdictions in which the known recipients of the CRF message reside (Washington, New York, and Canada). *Calder,* 465 U.S. at 789–91, 104 S.Ct. at 1487–88. *See also Cubbage,* 744 F.2d at 671–72 ("[t]he court sitting in the place the injury occurred is ordinarily the most efficient forum").

Assertion of jurisdiction does not unduly burden defendants. "Modern means of communication and transportation have tended to diminish the burden of defense of a lawsuit in a distant forum." *Ins. Co. of North America,* 649 F.2d at 1271. Many of the witnesses are located in California while, except for the defendants themselves, none of the witnesses or evidence is located in Vermont.

In conclusion, defendants purposefully injected themselves into California through third parties. Although the defendants did not induce reliance in California itself through the CRF message, they intentionally directed the effects of their conduct into the forum, making jurisdiction in this case reasonable. *Data Disc,* 557 F.2d at 1288 (it may be unreasonable to subject a defendant liable for only negligent conduct having an effect in the forum state).

▆ White's status as an RRI employee or agent does not insulate him from jurisdiction. *Supra,* 465 U.S. at 813, 104 S.Ct. at 1482. This Court must assess the contacts of each defendant individually, *Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980), and, as discussed above, the intentional conduct by White on behalf of RRI subjects both defendants to this Court's jurisdiction.

▆ On the other hand, plaintiffs have failed to present any evidence establishing

the requisite minimum contacts between the State of California and defendant Larry Martin. Plaintiffs merely allege that there is such unity of interest between Martin and defendant RRI that the parties themselves are indistinguishable. Such a bald assertion fails to satisfy the requisite prima facie showing of jurisdictional facts, required under *Data Disc, supra.* Absent any evidence of relevant conduct by Martin himself, this Court cannot assert jurisdiction over a non-resident defendant based on the activities of his employer. *Calder,* 465 U.S. at 790, 104 S.Ct. at 1487, 79 L.Ed.2d at 813.

Accordingly, defendants RRI and White's Motion to Dismiss for Lack of Personal Jurisdiction is denied, and defendant Martin's Motion is granted.

IT IS SO ORDERED.