**PANAVISION INTERNATIONAL, L.P., a Delaware Limited Partnership, Plaintiff,**

v.

**Dennis TOEPPEN, an individual, Network Solutions, Inc., a District of Columbia Corporation, and Does 1–50, Defendants.**

**No. 96–3284 DDP (JRx).**

United States District Court, C.D. California.

Sept. 19, 1996.

618

William E. Thomson, Jr., Ivy Kagan Bierman, Sean A. Luner, Kaye Scholer Fierman Hays & Handler, Los Angeles, CA, for Panavision International L.P.

Bruce W. Hamby, Orange, CA, Joseph D. Murphy, Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, Champaign, IL, for Dennis Toeppen.

ORDER DENYING DEFENDANT TOEPPEN'S MOTION TO QUASH THE SUMMONS AND DISMISS FOR LACK OF PERSONAL JURISDICTION

PREGERSON, District Judge.

Defendant Dennis Toeppen's Motion to Quash the Summons and Dismiss for Lack of Personal Jurisdiction, brought pursuant to Federal Rules of Civil Procedure 12(b)(2), came before the Court on September 16, 1996. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court denies Toeppen's Motion to Quash.

## I. BACKGROUND

Plaintiff Panavision International, L.P. ("Panavision") is a Delaware limited partnership with its principal place of business in Los Angeles, California. Panavision owns several federally registered trademarks, including "Panavision" and "Panaflex," which it uses in connection with its theatrical motion picture and television camera and photographic equipment business.

Defendant Dennis Toeppen ("Toeppen") is an individual residing in Illinois. Toeppen owns several web sites, including the two at issue in this case, "panavision.com" and "panaflex.com." (Farrand Decl. ¶ 15.)

Defendant Network Solutions, Inc. ("NSI") is a District of Columbia corporation with its principal place of business in Herndon, Virginia. NSI registers Internet domain names.

The Internet is an international computer "super-network" of over 15,000 computer networks used by about 30 million individuals, corporations, organizations, and educational institutions worldwide. *See generally American Civil Liberties Union v. Reno,* 929 F.Supp. 824, 830–848 (E.D.P.A.1996) (discussing the Internet). In recent years, businesses have begun to use the Internet to provide information and products to consumers and other businesses.

Every Internet user has a unique address consisting of one or more address components. This address is commonly referred to as the "domain" or "domain name." On the Internet, domain names serve as the primary identifier of the Internet user. Businesses on the Internet commonly use their business names (e.g., IBM) with the designation ".com" (e.g., IBM.com) as their domain names. The designation ".com" identifies the name holder as a commercial entity.

NSI does not make an independent determination of an applicant's right to use a domain name. However, since at least November 23, 1995, NSI has required applicants, including Toeppen, to make certain representations and warranties, including: (1) that the applicant's statements in the application are true and the applicant has the right to use the requested domain name; (2) that the use or registration of the domain name does not interfere with or infringe the rights of any third party with respect to trademark, service mark, trade name, company name or any other intellectual property right; and (3) that the applicant is not seeking to use the domain name for any unlawful purpose, including tortious interference with contract or prospective business advantage, unfair competition, injuring the reputation of another, or for the purpose of confusing or misleading a person, whether natural or incorporated.

In December of 1995, Toeppen applied for registration of the Internet domain name "Panavision.com" and NSI registered the domain name. (Toeppen Decl. ¶ 12.) Toeppen is not, and never has been, authorized to use the Panavision Marks. (Farrand Decl. ¶ 16.)

After registering the "Panavision.com" domain name, Toeppen established a "web site" displaying aerial views of Pana, Illinois. (Toeppen Decl. ¶ 12.) At no time did Toeppen use the "Panavision.com" name in connection with the sale of any goods or services. (Toeppen Decl. ¶ 13.)

Like many businesses, Panavision has decided to do business via the Internet. When Panavision attempted to establish a web site under its own name, however, it discovered that Toeppen had registered domain names using the Panavision trademarks. (Farrand Decl. ¶ 12.)

By registering the "Panavision.com" domain name with NSI, Toeppen has prevented Panavision from registering and using its own trademark, Panavision, as an Internet domain name. (Farrand Decl. ¶ 13.)

After Panavision notified Toeppen of its intent to use the "Panavision.com" domain name, Toeppen demanded $13,000 to discontinue use of the domain name. (Farrand Decl. ¶ 14.) Toeppen subsequently registered Panavision's "Panaflex" trademark as the domain name "Panaflex.com." (Farrand Decl. ¶ 15.) Panavision asserts, based on conversation with an attorney for American Standard, Inc., that Toeppen is also a defendant in trademark actions brought by American Standard, Inc. and Intermatic, Inc. because of Toeppen's registration of "americanstandard.com" and "intermatic.com" as domain names and subsequent demands for money to relinquish control of the names. (Thomson Decl. ¶ 10.) Toeppen is also the registered owner of several other domain names that are similar to trademarked names, including: aircanada.com; anaheimstadium.com; arriflex.com (Arriflex is Panavision's main competitor); australiaopen.com; camdenyards.com; deltaairlines.com; eddiebauer.com; flydelta.com; frenchopen.com; lufthansa.com; neimanmarcus.com; northwestairlines.com; and yankeestadium.com. (Thomson Decl. ¶ 7, Ex. 10.)

Panavision asserts that Toeppen's sole purpose in registering the domain names at issue was to extort money from Panavision.

On May 7, 1996, Panavision brought claims against Toeppen and NSI in the Central District of California for: 1) federal dilution of trademark; 2) state dilution of trademark; 3) federal trademark infringement; 4) federal unfair competition; 5) unfair competition; 6) intentional interference with prospective economic advantage; 7) negligent interference with prospective economic advantage; and 8) breach of contract.

On August 21, 1996, Toeppen filed this Motion to Quash the Summons and Dismiss the Complaint for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Toeppen alleges that the Court lacks personal jurisdiction because Toeppen resides in Illinois and the allegations concern Toeppen's actions in Illinois.

## II. DISCUSSION

It is the plaintiff's burden to establish personal jurisdiction. *See Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995). The plaintiff need only make a *prima facie* showing of jurisdiction where, as

here, the court did not hear testimony or make factual findings. *See id.; Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir.1995). This showing can be based on the affidavits of knowledgeable witnesses. *See Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977); *California Software Inc. v. Reliability Research, Inc.*, 631 F.Supp. 1356 (C.D.Cal.1986).

■ Where there is no applicable federal statute governing personal jurisdiction, federal courts must apply the law of the state in which the district court sits. *Core–Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1484 (9th Cir.1993). California's "long-arm" statute permits courts to assert jurisdiction over a nonresident defendant whenever permitted by the state and federal Constitutions. Cal. Code Civ.P. § 410.10. Therefore, the Court "need only determine whether personal jurisdiction in this case would meet the requirements of due process." *Core–Vent*, 11 F.3d at 1484 (quoting *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir.1989)).

### A. General Jurisdiction

■ General jurisdiction permits a court to exercise personal jurisdiction over the defendant as to any cause of action arising in any jurisdiction. *See Omeluk*, 52 F.3d at 270. General jurisdiction exists when the defendant is domiciled in the forum state or its activities there are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *Omeluk*, 52 F.3d at 270.

■ The Court does not have general jurisdiction over Toeppen. First, he is domiciled in Illinois, not California. Second, his activities in California are not substantial, systematic, or continuous. In 1996, Toeppen was in California twice, which he asserts is representative of his yearly contacts with this state.

### B. Specific Jurisdiction

■ Specific jurisdiction arises in circumstances where the defendant's contacts with the forum state are insufficient to establish general jurisdiction but the defendant's activities in the forum are sufficient to establish jurisdiction for the purposes of the litigation. *See Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872; *Omeluk*, 52 F.3d at 270. The defendant need not ever have been physically present in the forum state for specific jurisdiction to apply. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *Data Disc*, 557 F.2d at 1288; *California Software*, 631 F.Supp. at 1360. The Court holds that it has specific jurisdiction over Toeppen.

The Ninth Circuit uses a three part test for specific jurisdiction: (1) "[t]he nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2) [t]he claim must be one which *arises out of or results from* the defendant's forum-related activities[; and] (3) [e]xercise of jurisdiction must be *reasonable.*" *Omeluk*, 52 F.3d at 270 (emphasis added).

#### 1. The "Purposeful Availment" Prong

■ The "purposeful availment" prong assures that a nonresident defendant will be aware that it could be sued in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In other words, this requirement protects a nonresident from being haled before a court solely because of "random, fortuitous or attenuated" contacts over which it has no control. *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. To pass this part of the test, it must be foreseeable that the defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566.

The "purposeful availment" test differs depending upon the underlying cause of action. *See e.g., Ziegler*, 64 F.3d at 473. For example, in cases arising from contract disputes, merely contracting with a resident of the forum state is insufficient to confer specific

jurisdiction. *See id.* In the tort setting, however, jurisdiction "can be predicated on (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." *Core–Vent,* 11 F.3d at 1486. This doctrine is known as the "effects test." *Id.*

Therefore, the court's initial analysis must be directed towards determining the nature of the underlying cause of action.

Panavision's allegations may be summarized as follows: Panavision and Panaflex are valuable trademarks associated with Panavision's business. A domain name is the primary way businesses are located on the Internet. The registration of its trademarks as domain names is valuable to Panavision because it allows Internet users who are familiar with the trademarks to easily search the Internet, locate Panavision's web site, and review any information that Panavision has posted. Toeppen identified Panavision (and other businesses), as a business whose trademarks were not registered as domain names. Toeppen then registered Panavision's trademarks as his domain names. Toeppen registered Panavision's trademarks because he believed that Panavision would eventually decide to create its own web address using its trademarks, that Panavision would discover that Toeppen had previously registered the trademarks as domain names, and that Panavision would pay Toeppen to relinquish his domain registrations rather than incur the expense and delay inherent in suing him. In short, Panavision alleges that Toeppen is not "doing business" in the traditional sense—he is not a competitor. His "business" is to act as a "spoiler," preventing Panavision and others from doing business on the Internet under their trademarked names unless they pay his fee.

Assuming the truth of Panavision's allegations for purposes of this motion, the Court finds that the tort analysis provides the proper analytical framework. At the very least, this action is "more akin to a tort claim than a contract claim." *Ziegler,* 64 F.3d at 474 (holding that a § 1983 claim was "more akin to a tort claim than a contract claim" and

using the "effects test" to analyze the "purposeful availment" prong of the jurisdiction test).

The "effects test" was established in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder,* the Court held that a reporter and an editor, both Florida residents, were subject to personal jurisdiction in California for an allegedly defamatory article that they had written for publication in a national magazine. The Court held that jurisdiction in California was proper because California was "the focal point of both the story and of the harm suffered." *Id.* at 789, 104 S.Ct. at 1486.

The Court emphasized that "petitioners [were] not charged with mere untargeted negligence ... [but with] intentional, and allegedly tortious, actions ... expressly aimed at California." *Id.* at 789–90, 104 S.Ct. at 1487; *see also California Software,* 631 F.Supp. at 1356 (holding that jurisdiction could be based on out-of-state communications made to out-of-state residents when the communications "were expressly calculated to cause injury in California"); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club L.P.,* 34 F.3d 410, 411–12 (7th Cir.1994) (holding that in a trademark case, jurisdiction was proper under *Calder* because if the defendant infringed the plaintiff's trademarks, the injury would be felt mainly in Indiana). In such circumstances, "an individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause injury in California." *Calder* 465 U.S. at 790, 104 S.Ct. at 1487.

Under the "effects doctrine," Toeppen is subject to personal jurisdiction in California. Toeppen allegedly registered Panavision's trademarks as domain names with the knowledge that the names belonged to Panavision and with the intent to interfere with Panavision's business. Toeppen expressly aimed his conduct at California. Finally, Toeppen has harmed Panavision, the brunt of which Panavision has borne in California, which Toeppen knew would likely happen because Panavision's principal place of business and the heart of the theatrical motion picture and

television camera and photographic equipment business are in California.

Toeppen's actions are anything but "random, fortuitous or attenuated." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. He has not engaged in "untargeted negligence" but has "expressly aimed" his tortious activities at California. *Calder,* 465 U.S. at 790, 104 S.Ct. at 1487. Jurisdiction is proper because Toeppen's out of state conduct was intended to, and did, result in harmful effects in California. Panavision should not now be forced to go to Illinois to litigate its claims. *Id.*

It is important to note that the Court does not hold that Toeppen is "doing business" in California via the Internet. Accordingly, cases such as *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996), *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996), and *Pres–Kap, Inc. v. System One,* 636 So.2d 1351 (Fla.Dist.Ct.App.1994) are not analogous to the case before the Court. The issue in those cases was whether contacts with the forum state via the Internet (or, in *Pres–Kap,* via a computerized airline and hotel reservation system) were sufficient to confer specific jurisdiction.

Although at first blush the cases seem similar to the case at bar, the semblance is superficial only. In each of those cases, the parties had legitimate businesses and legitimate legal disputes. Here, however, Toeppen is not conducting a business but is, according to Panavision, running a scam directed at California.

### 2. The "arises out of or results from" prong.

Courts in the Ninth Circuit follow a "but for" analysis of this prong of the test. *See, e.g., Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir.1995). That is, if the plaintiff would not have suffered loss "but for" the defendant's forum-related activities, courts hold that the claim arises out of the defendant's forum-related activities. *See Ziegler* 64 F.3d at 474.

Here, "but for" Toeppen's conduct in registering Panavision's trademarks as domain names, Panavision would be able to establish an easily located web site and thus would not have been injured.

### 3. The "reasonableness" prong.

This prong requires that the court's exercise of jurisdiction comport with "fair play and substantial justice." *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2185. The factors that the court must consider are: (1) the extent of defendant's "purposeful" interjection; (2) the burden on defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See id.* at 476–77, 105 S.Ct. at 2184–85. No one factor is dispositive: the court must balance all seven. *Core–Vent,* 11 F.3d at 1486–87.

In the tort setting, "[i]f a nonresident, acting outside the state, intentionally causes injuries within the state, local jurisdiction is *presumptively not unreasonable*: 'Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that ... would render jurisdiction unreasonable.' " *Core–Vent,* 11 F.3d at 1486.

The Court finds that Toeppen has not presented a compelling case that jurisdiction is unreasonable. After balancing the seven factors from *Burger King,* it is clear that jurisdiction over Toeppen comports with "fair play and substantial justice." *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2185. "[I]n this era of fax machines and discount air travel," requiring Toeppen to litigate in California is not constitutionally unreasonable. *Sher v. Johnson,* 911 F.2d 1357, 1365 (9th Cir.1990); *see also, California Software,* 631 F.Supp. at 1363 (noting that "modern means of communication and transportation have tended to diminish the burden of defense of a lawsuit in a distant forum") (quoting *Insurance Co. of N. America v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir.1981)).

## III. CONCLUSION

The Court finds that Defendant Dennis Toeppen meets the due process requirements for personal jurisdiction. Therefore, the Court denies Defendant Dennis Toeppen's Motion to Quash the Summons and Dismiss for Lack of Personal Jurisdiction.

**IT IS SO ORDERED.**