EDIAS SOFTWARE INTERNATIONAL, L.L.C., an Arizona limited liability company; EDIAS Software International GmbH, a German business entity, EDIAS Software International B.V., a Dutch business entity, Plaintiffs,

v.

BASIS INTERNATIONAL LTD., a New Mexico corporation, Defendant.

No. CIV 96–0932 PHX PGR.

United States District Court, D. Arizona.

Nov. 21, 1996.

Christopher Garth Weinstock, Rodney Wayne Ott, Bryan Cave, Phoenix, AZ, for plaintiffs.

Robert J. Muehlenweg, Todd Michael Stafford, Albuquerque, NM, Jennifer Beaver Nore, Phoenix, AZ, for defendant.

## ORDER

ROSENBLATT, District Judge.

### BACKGROUND

EDIAS and BASIS contracted in March 1995 for EDIAS to distribute BASIS' software products abroad in Germany, Austria, Belgium, Denmark, Greece, the Netherlands, Luxembourg, and Switzerland. EDIAS, the

Plaintiffs in this action, is a company with offices in Arizona, Germany, and the Netherlands. The New Mexico Defendant company, BASIS, has no offices in Arizona. The two companies signed the contract in New Mexico and the contract provides that New Mexico law governs the contract.

After the signing of the March 1995 contract, BASIS became dissatisfied with its relationship with EDIAS and elected to terminate its agreement with the company. BASIS informed its regular European customers and BASIS employees of the decision via personal e-mail messages. The messages contained a "Question and Answer Sheet" stating,

1. Why did EDIAS lose its Authorized Distributor Status? BASIS requires all of its distributors to sign agreements to ensure that they will provide their customers with BASIS' products at a fair price, complete technical support, and product information. EDIAS is unwilling to sign such an agreement to renew its distributor contract, so BASIS chose not to renew EDIAS' Distributor status.

BASIS additionally posted a "Press release" message on its Compuserve Web page and in a CIS forum. The message stated,

"BASIS decided long ago that all its distributors should commit to sell BASIS' products at a fair price, provide complete technical support, and distribute product information to their customers," says George Hight, President of BASIS. "When we were unable to get a signed commitment on these principles of fairness and customer service from the upper management at EDIAS, our relationship with that company had to change."

EDIAS filed a complaint with this Court on April 18, 1996, against BASIS for breach of contract and "the covenant of good faith and fair dealing." Additionally, EDIAS alleges that the e-mail, Compuserve Web page, and forum message give rise to claims for libel, defamation, tortious interference with contract and prospective advantage, and violation of the Lanham Act, 15 U.S.C. Section 1125(a).

BASIS filed a timely motion to dismiss EDIAS' complaint for lack of personal jurisdiction on May 9, 1996 to which EDIAS responded on May 28, 1996. EDIAS argues that BASIS has sufficient contacts with Arizona to warrant both general and specific jurisdiction over BASIS, but concedes that the main issue in this case concerns specific jurisdiction. BASIS filed its reply on July 17, 1996, controverting many of EDIAS' factual claims. EDIAS filed an additional motion for leave to file a supplemental response, with a memorandum, on July 12, 1996. BASIS filed an opposition to the supplemental response on July 29, 1996, arguing that they brought up no new issues in the reply to give cause for such a sur-response. This court granted EDIAS' motion to supplement on November 14, 1996.

Both parties agree that phone calls, fax, and e-mail communications occurred between them after EDIAS established an Arizona address and during the business relationship. Both parties agree that BASIS sold approximately $858,000 worth of products to Arizona customers: $808,000 worth to EDIAS for distribution abroad and about $50,000 worth to other Arizona customers. The parties also agree that EDIAS did not have an Arizona office prior to 1994. Finally, the parties agree that on April 10, 1996 a message appeared in certain e-mail and fax communications from BASIS to its customers, and on BASIS' Compuserve Web page and CIS forum about EDIAS.

EDIAS supports its arguments in favor of jurisdiction with an affidavit from Anton A. Langelaar, the president of EDIAS Software International, L.L.C.,[1] Edias Software International GmbH,[2] and EDIAS Software International B.V.[3] According to the affidavit, EDIAS Software International, L.L.C. (hereinafter EDIAS) keeps its principle place of

---

1. EDIAS Software International, L.L.C. is located in Arizona.

2. EDIAS Software International GmbH is located in Germany.

3. EDIAS Software International B.V. is located in the Netherlands.

business in Prescott, Arizona. The March 1995 contract supports this claim, stating that EDIAS' "principle place of business" is in Prescott. Copies of fax and e-mail communications also indicate that BASIS communicated with EDIAS at its Arizona address.

BASIS, on the other hand, through affidavits of John Rose, BASIS' vice-president, contends that Mr. Langelaar keeps only a vacation home in Prescott where BASIS has often reached him by phone, fax, or e-mail. Furthermore, where EDIAS asserts that EDIAS established the Arizona address in early 1994, BASIS asserts that Mr. Langelaar "unilaterally" established the address in late 1994. The affidavit says that EDIAS has no commercial office space in Arizona, no directory assistance listing of the company, and no Arizona employees other than Langelaar's wife. The affidavit alleges that EDIAS, instead, does all of its business in Europe.

EDIAS contends that the phone calls, fax, and e-mail communications between EDIAS and BASIS contributed to the negotiation of the March 1995 contract. Additionally, EDIAS asserts that BASIS' employees visited Arizona to participate in the negotiations. In particular, EDIAS highlights a non-disclosure agreement that refers to conversations held at the Phoenix Sky Harbor airport, a fax from BASIS to Mr. Langelaar detailing an expected arrival in Prescott, and Mr. Langelaar's affidavit which states that Thom Olsen, BASIS' former president and CEO visited him at least three times regarding EDIAS' and BASIS' relationship. Langelaar's affidavit also highlights visits by BASIS' employees to Arizona customers other than EDIAS.

Mr. Rose's affidavit for BASIS states that no negotiations took place in Arizona; rather, the visits to Arizona were either social or unrelated to the March 1995 contract. In support of this contention, Rose's affidavit points out that a full year lapsed between the last alleged negotiation and the contract

signing. Finally, Rose's affidavit explains that BASIS' employees only rarely visit Arizona customers and that BASIS' sales to customers other than EDIAS represent only .75% of BASIS' total sales and have no relationship to EDIAS.[4]

EDIAS, finally, contends that the defamatory messages that appeared in the e-mail messages and on the Compuserve Web page and forum *by themselves* serve to establish specific personal jurisdiction as defamation *per se*, directed at Arizona. Additionally, in its sur-response EDIAS includes copies of a Compuserve Buyer's Guide, with no address on it, and a Compuserve Directory sent to a Chandler resident including BASIS' product listings, to show not only that BASIS knew its Internet message would reach Arizona, but that BASIS advertised in Arizona. BASIS insists that none of their activities were "directed at" Arizona.

*DISCUSSION*

 Arizona federal courts exercise personal jurisdiction over nonresident litigants to the full extent allowable under the constitution. *Uberti v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995); Arizona Rules of Civil Procedure 4.2(a). The Supreme Court has determined that Constitutional due process for the exercise of personal jurisdiction requires a nonresident defendant to have certain minimum contacts with the forum such that the exercise of jurisdiction would be both fair and reasonable. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Separate tests have developed to determine whether a forum has general or specific jurisdiction over a defendant. *Compare Helicopteros Nacionales v. Hall*, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (general jurisdiction) *with Burger King v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (specific jurisdiction). In order to sustain a claim of personal jurisdiction over a nonresident defendant on defendant's motion to dismiss for lack of personal jurisdic-

---

4. Rose's affidavit also explains that BASIS only sold products to eleven customers in Arizona since 1995. Five of these customers purchased the products for resale and the other six use the products in their own businesses. Only five of the eleven have purchased products again in 1996.

tion, a plaintiff need only establish a *prima facie* case for jurisdiction. *Karsten Manufacturing Corp. v. United States Golf Ass'n.*, 728 F.Supp. 1429, 1432 (D.Ariz.1990). Additionally, all factual disputes are resolved in favor of the plaintiff. *Id.*

## I. GENERAL JURISDICTION

*Perkins v. Benguet Consolidated Mining Co.* established that jurisdiction over causes of action unrelated to a nonresident's contacts with the forum exists when the contacts are sufficiently substantial. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447, 72 S.Ct. 413, 419, 96 L.Ed. 485 (1952). In *Perkins* a foreign company ran a business in the forum state, paying employees from the forum state's banks, holding director's meetings in the forum state, maintaining files, and corresponding from the forum state. *Id.* at 447–48, 72 S.Ct. at 419–20. The Supreme Court has since maintained a high standard for the allowance of general jurisdiction. *See Helicopteros Nacionales*, 466 U.S. 408, 104 S.Ct. 1868 (finding that the defendant who purchased millions of dollars worth of products, negotiated a contract, and even trained employees in the forum state could not be subjected to general jurisdiction).

BASIS has no physical presence in Arizona, maintains no files in Arizona, holds no bank accounts in Arizona, and has never litigated in Arizona. But BASIS does have other contacts based on its substantial, ongoing relationship with EDIAS, involving communications, visits to Arizona, sales, and Internet activities. Thus, a strong argument might be made in favor of subjecting BASIS to general jurisdiction in Arizona. Because BASIS' contacts in Arizona all relate to EDIAS' claims, however, it suffices to determine whether BASIS may be subjected to specific jurisdiction here. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995) (finding that in order for minimum contacts to establish specific jurisdiction, those contacts must be related to the plaintiff's claims).

## II. SPECIFIC JURISDICTION

 Specific jurisdiction allows a court to assert jurisdiction only over claims related to

the defendant's contacts with the forum state. *Burger King*, 471 U.S. at 472–73, 105 S.Ct. at 2182. The Ninth Circuit's three part test for specific jurisdiction requires:

1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections[;]

2) [t]he claim must be one which arises out of or results from the defendant forum related activities [; and]

3) [e]xercise of the jurisdiction must be reasonable.

*Ballard*, 65 F.3d at 1498. This analysis addresses each requirement to determine whether EDIAS has made the requisite *prima facie* showing of BASIS' contact with Arizona. *Karsten*, 728 F.Supp. at 1432.

BASIS has relatively few connections to Arizona. EDIAS, however, argues that the contract between BASIS and EDIAS, BASIS' product sales in Arizona, and BASIS' employee visits, phone calls, fax, and e-mail communications to EDIAS in Arizona all contribute to the necessary contacts. Additionally, EDIAS argues that the Internet advertising and the allegedly defamatory message that appeared in e-mail and fax communications and on BASIS' Compuserve Web page and forum establish jurisdiction.

### A. Purposeful Availment

 EDIAS correctly argues that specific jurisdiction may exist over a defendant who has no physical presence in the forum state. *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. The relevant inquiry is whether BASIS has availed itself of the protections and benefits of Arizona, as stated in the first part of the Ninth Circuit's test. *Ballard*, 65 F.3d at 1498. The contacts that BASIS has with Arizona include: a contract with an Arizona company, phone, fax, and e-mail communications with EDIAS in Arizona during the business relationship, sales to EDIAS and other Arizona customers, and visits to Arizona.

### 1. The Contract

The Supreme Court noted in *Burger King* that although a contract alone may not establish minimum contacts between a nonresident defendant and the jurisdiction, evaluation of the events and activities surrounding the contract and the contract terms may serve "to determine whether a defendant purposefully established minimum contacts with the forum." *Burger King*, 471 U.S. at 463, 105 S.Ct. at 2177. Consequently, the expectations of both parties as represented by the contract terms contribute to the specific jurisdiction analysis.

The contract between EDIAS and BASIS provides that EDIAS will distribute BASIS' products outside of Arizona. The right of EDIAS to distribute BASIS products is exclusive to those European countries listed in the contract. Thus, the contract itself does not conceive of BASIS' products entering into Arizona through BASIS' relationship with EDIAS. BASIS maintains, and EDIAS does not contradict, that all products for distribution were shipped from New Mexico directly to Europe. The contract also required that EDIAS do all marketing of BASIS products in Europe. Finally, the parties signed the contract in New Mexico and the contract provides that New Mexico law will govern the contract.

EDIAS, however, highlights other contract provisions suggesting that BASIS could have anticipated being "haled into court" in Arizona. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). For instance, the contract states that Arizona is the principle place of business for EDIAS.[5] The contract further requires that BASIS invoice products to Arizona. At oral argument on the motion, BASIS agreed that the company had both agreed to and, in fact, sent the invoices, including both a statement of goods shipped and payment due to EDIAS in Arizona. *See Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir.1986) (finding that continuing obligations to forum resi-

dents contribute to purposeful availment). Additionally, EDIAS paid its outstanding invoices for the $808,000 worth of products with checks from an Arizona bank account. These contacts indicate that BASIS had some awareness that it dealt with an Arizona company and might be subjected to jurisdiction here.

### 2. BASIS' relationship with EDIAS

BASIS argues that the long standing relationship between BASIS and EDIAS originated approximately ten years prior to the March 1995 contract between a New Mexico company and the European divisions of EDIAS. Thus, BASIS contends that BASIS did not solicit the business of an Arizona company; rather, EDIAS "unilaterally" established the Arizona address. *See Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1418–19 (10th Cir.1988) (ordinary use of mail or telephone, without more, does not establish jurisdiction). The facts indicate, however, that the relationship between BASIS and EDIAS did not merely consist of the ordinary use of mail and telephone. BASIS agreed to the March 1995 contract, including the provisions stating that Prescott, Arizona, was EDIAS' principle place of business. BASIS also agreed to the provision requiring BASIS to send invoices to EDIAS in Arizona. Finally, BASIS apparently agreed at oral argument that BASIS' employees communicated directly with EDIAS employees via phone, fax, and e-mail communications and BASIS employees even visited Arizona. Consequently, whether EDIAS "unilaterally" established the Arizona address, or not, BASIS' activities suggest that not only did BASIS know of the Arizona address, but purposefully availed itself of the privilege of doing business in Arizona in the course of its relationship with EDIAS.

### 3. EDIAS' defamation allegations

In addition to the already described contacts that BASIS has with Arizona, EDIAS alleges that BASIS defamed EDIAS in e-mail messages to EDIAS customers and other BASIS distributors. EDIAS also as-

---

**5.** The two other defendants in this action are the European EDIAS companies: EDIAS Software International GmbH, located in Germany, and EDIAS Software International B.V., located in the Netherlands. According to a signed agreement with BASIS, the March 1995 contract also bound the other two EDIAS companies.

serts that BASIS advertises in Arizona via a Compuserve Web page and forum, on which BASIS posted the allegedly defamatory statements about EDIAS. The statements explain that because EDIAS would not meet BASIS' pricing and customer service expectations, BASIS dropped EDIAS as a product distributor. EDIAS asserts that the statements amount to defamation *per se* because they are false and because BASIS could have foreseen that their dissemination would cause harm to EDIAS in Arizona. Thus, EDIAS argues statements give rise to EDIAS' claims for libel, defamation, violation of the Lanham Act, 15 U.S.C. section 1125(a), and tortious interference with contract and prospective advantage *and* establish personal jurisdiction over BASIS under the "effects test." *See Core–Vent Corp. v. Nobel Industries,* 11 F.3d 1482, 1486–87 (9th Cir.1993) (describing the Ninth Circuit interpretation of *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) as the "effects test").

The Supreme Court has recognized libelous statements by a nonresident defendant as a basis for jurisdiction in the plaintiff's forum. *Calder v. Jones,* 465 U.S. at 788–89, 104 S.Ct. at 1486–87. A California court exercised jurisdiction over a Florida based magazine that printed defamatory statements about a California resident based on the alleged injurious effect of the statements felt by the plaintiff in California. *Id.* The Ninth Circuit has since determined that a single phone call, initiated by an Arizonan, resulting in a nonresident defendant's allegedly defamatory statements sufficed to establish jurisdiction in Arizona. *Brainerd v. Governors of the University of Alberta,* 873 F.2d 1257 (9th Cir.1989). Because Arizona has not previously addressed the question of whether alleged defamations over the Internet may establish personal jurisdiction, this court addresses the issue as one of first impression.

**6.** LANCE ROSE, NETLAW (1995).

**7.** *Id.* at 23.

**8.** *Id.* at 58, 124.

**9.** *Id.* at 14.

### a. The Internet

The Internet can be described by a number of different metaphors, all fitting for different features and services that it provides.[6] For example, the Internet resembles a highway, consisting of many streets leading to places where a user can find information.[7] The metaphor of the Internet as a shopping mall or supermarket, on the other hand, aptly describes the Internet as a place where the user can shop for goods, information, and services.[8] Finally, the Internet also can be viewed as a telephone system for computers by which data bases of information can be downloaded to the user, as if all the information existed in the user's computer's disc drive.[9]

The highway metaphor highlights the expansiveness of the Internet—the ability for a user to reach another person or database instantly despite great physical distances. The shopping mall metaphor reveals the newly developed commercial feature of the Internet as a place to go to purchase needed items or services. Finally, the Internet as a telephone line describes the technology that allows people and computers to "talk" to each other and access information. Today, approximately 25 million people have access to this incredible network of information and services. *Bensusan Restaurant Corporation v. Richard B. King,* 937 F.Supp. 295, 297 n. 1 (S.D.N.Y.1996).

The modes of Internet communication relevant to this case are e-mail messages, Web pages (or Web sites), and forums. E-mail is, simply, electronic mail. Users have computer addresses to where messages can be sent. Thus, e-mail does not differ substantially from other recognizable forms of communication, such as traditional mail or phone calls, where one person has an address or phone number to reach another person.[10] In this case, BASIS allegedly sent e-mail messages, including the allegedly defamatory statements to EDIAS customers and other BASIS distributors.

**10.** Additional problems or issues may exist in the context of sending e-mail messages that are not present in this case.

A Web site is, "an Internet address which permits users to exchange digital information with a particular host ..." *Id.* In other words, BASIS' Compuserve Web page is an information screen that Compuserve subscribers can access to learn about BASIS. The site can be visited repeatedly by any number of users on a given day, making the information on a Web page even more accessible to a greater number of people than other forms of publication or advertisement. *See Inset Systems, Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161, 163, 165 (D.Conn.1996) (contrasting Internet Web sites from radio or television advertisements because a Web site is available continually, rather than for certain brief moments during a day). In connection with its Compuserve Web page, BASIS also had a CIS forum. A forum resembles a bulletin board where messages can be posted by the page visitor or the page owner. Thus, a Web page with a forum allows interaction between the page visitors and between the page visitors and the owner.

b. The "effects test"

BASIS' e-mail messages to Arizona and Compuserve Web site which reaches Arizona customers count as an additional "contacts" under a minimum contacts analysis, but additionally confer jurisdiction in Arizona under the "effects test." *Calder,* 465 U.S. at 789–90, 104 S.Ct. at 1486–87; *Core–Vent,* at 1486–87. The test focuses on the tortious act by a nonresident defendant that results in injury in the forum state. *Calder,* 465 U.S. at 789–90, 104 S.Ct. at 1486–88; *Brainerd,* 873 F.2d at 1258; *Core–Vent,* 11 F.3d at 1486. When intentional actions are expressly aimed at the forum state and cause foreseeable harm to the plaintiff, jurisdiction in the forum state exists. *Core–Vent,* 11 F.3d at 1486. The e-mail, Web page, and forum message were both directed at Arizona and allegedly caused foreseeable harm to EDIAS.

BASIS directed the e-mail, Web page, and forum message at Arizona because Arizona is EDIAS' principle place of business. EDIAS allegedly felt the economic effects of the defamatory statements in Arizona. *See Core–Vent,* 11 F.3d at 1486–87 (rejecting the argument that a libelous statement about a corporation, rather than an individual is not directed at any particular geographic location, for the purposes of the effects test). Thus, if BASIS could foresee that the result of the statements might be to deter potential EDIAS customers, then BASIS could also foresee that the injury might be felt in Arizona. Additionally, according to the complaint, BASIS knew that the statements would cause such harm to EDIAS. *See Brainerd,* 873 F.2d at 1258 (determining that defamatory statements made by a Canadian, during a telephone conversation initiated by a person in Arizona, conferred jurisdiction in Arizona because the nonresident defendant allegedly knew that the injury and harm resulting from the communication would be felt in Arizona).

The Central District Court of California concluded that a similar allegedly libelous statement circulated in a computer forum established jurisdiction based on the foreseeable injury felt in the forum state. *California Software Inc. v. Reliability Research,* 631 F.Supp. 1356 (C.D.Cal.1986). The court addressed the question of whether such statements made through a computer forum as answers to forum inquiries should change the jurisdiction analysis, stating:

> Unlike communication by mail or telephone, messages sent through computers are available to the recipient and anyone else who may be watching. Thus, while modern technology has made nationwide commercial transactions simpler and more feasible, even for small businesses, it must broaden correspondingly the permissible scope of jurisdiction exercisable by the courts.

*Id.* at 1363. The Ninth Circuit subsequently followed the *California Software* analysis in later cases concerning the injurious effects of statements made by nonresident defendants. *See e.g., Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1198 (9th Cir.1988). This court, thus, agrees with EDIAS' assertion that BASIS should not be permitted to take advantage of modern technology through an Internet Web page and forum and simultaneously escape traditional notions of jurisdiction.

### B. Relationship between EDIAS' claims and BASIS' forum related activities

The pleadings and oral arguments of the parties indicate that BASIS has purposefully availed itself of the protections and privileges of Arizona law based on the contractual relationship between BASIS and EDIAS, and BASIS accompanying activities in Arizona, in addition to the dissemination of allegedly defamatory statements about EDIAS on BASIS Web page. These activities must also be related to EDIAS' claim, however. *Ballard*, 65 F.3d at 1500. The Ninth Circuit decided that the "but for" test that originated in *Shute v. Carnival Cruise Lines*[11] determines whether a claim sufficiently relates to forum activities. *Id.* The test poses the question, but for BASIS' contact with Arizona, would EDIAS' claims against BASIS have arisen? But for BASIS' contractual relationship with an Arizona company, EDIAS would not have a claim that BASIS breached the covenant of good faith and fair dealing, violated the Lanham Act, 15 U.S.C. section 1125(a), or tortiously interfered with contract and prospective advantage. Thus, the "but for" test is satisfied. *Id.*

### C. Reasonableness of asserting jurisdiction over BASIS

Once this court finds that a defendant has purposefully availed itself of Arizona law, and that the plaintiff's claim relates to the defendant's activities in the forum, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. *Ballard*, 65 F.3d at 1500. Seven factors contribute to the overall analysis of whether the exercise of jurisdiction over a nonresident defendant comports with fairness and justice:

1) the extent of the defendants' purposeful interjection into the forum state's affairs; 2) the burden on the defendant of litigating in the forum; 3) the extent of conflict with the sovereignty of the defendant's state; 4) the forum state's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the controversy; 6) the importance of the forum to the plaintiff's

interest in convenient and effective relief; and 7) the existence of an alternate forum. *Core–Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1487–88 (9th Cir.1993). No one factor is determinative. *Id.* at 1488. The analysis of each must be balanced with the whole. *Id.*

#### 1. The extent of BASIS' purposeful availment

The visits and the many phone, fax, and e-mail communications that BASIS made to Arizona, in addition to the invoices that BASIS sent to Arizona, and the allegedly defamatory statements indicate that BASIS purposefully availed itself of the benefits and protections of Arizona. Once a defendant has purposefully availed itself of such protections and privileges, a strong presumption exists that the exercise of jurisdiction will be reasonable. *Ballard*, 65 F.3d at 1500. Furthermore, the defendant must then present a compelling argument to rebut this presumption. *Id.*

#### 2. Burden on BASIS to litigate in Arizona

At times courts have considered the great distance that a foreign defendant must travel to litigate in the United States, in addition to the problem of litigating under unfamiliar laws, and found the burden of litigating too great. *See e.g., Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 102–03, 107 S.Ct. 1026, 1027, 94 L.Ed.2d 92 (1987) (finding that interests in favor of litigating the dispute in California did not outweigh the burden on the foreign company to travel a great distance and litigate in the unfamiliar forum). In terms of physical distance, BASIS would not suffer a great burden to litigate in Arizona. Similarly, BASIS should not be entirely unfamiliar with procedural rules in an Arizona federal district court or with the federal laws relating to this claim. BASIS has not, however, provided any information about the inconvenience that it would be subjected to if required to defend in Arizona.

#### 3. Sovereignty conflicts

Sovereignty issues arise when a defendant resides in a foreign country such

---

**11.** *Shute v. Carnival Cruise Lines,* 897 F.2d 377 (9th Cir.1990).

that concerns about conflicts with the home State's sovereignty relate to the possible results of litigation. *Asahi Metal Industry,* 480 U.S. at 102–03, 107 S.Ct. at 1026–28. Additionally, where relevant laws of two states with contacts to the controversy conflict as a matter of public policy, issues of sovereignty may arise. *Fauntleroy v. Lum,* 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 (1908). Nothing in the pleadings or oral arguments suggest that sovereignty issues exist in this case.

### 4. Arizona's interest in adjudicating this dispute

Arizona has an interest in adjudicating a claim that affects an Arizona company. As stated, EDIAS had an established Arizona address at the time of the contract formation and during the business relationship. BASIS knew of the address, sending invoices to Arizona, receiving payment from an Arizona bank, and contacting BASIS' employees in Arizona during visits or by telephone, fax, and e-mail communications.

5. The most efficient or convenient resolution of the controversy, importance of the forum to EDIAS, and the existence of an alternate forum

The most convenient resolution of this matter, for EDIAS, would be in Arizona. EDIAS does not indicate any advantage in resolving the suit here other than convenience. Because the parties signed the contract in New Mexico and agreed to have New Mexico law govern the contract, however, a New Mexico court might provide an alternate forum.

*CONCLUSION*

On balance, EDIAS has sufficiently established a *prima facie* case for the exercise of personal jurisdiction over nonresident Defendant BASIS because the pleadings and oral arguments show that BASIS purposefully availed itself of the privilege of doing business in Arizona such that the company might have predicted that it might be subjected to jurisdiction here. In the course of BASIS' business relationship with EDIAS, BASIS has contacted EDIAS employees via telephone, fax, and e-mail communications, sold several thousands of dollars worth of prod-

ucts to EDIAS for distribution, sent invoices to EDIAS in Arizona, BASIS employees have visited Arizona, and, finally, BASIS disseminated allegedly defamatory statements about EDIAS that were both directed at and caused harm in Arizona. Moreover, BASIS has not met its burden to dispel the presumption that the exercise of jurisdiction in Arizona would be reasonable. Consequently, this court finds that the exercise of jurisdiction over BASIS in Arizona meets the Constitutional due process requirements necessary under Arizona law and BASIS' motion to dismiss for lack of personal jurisdiction fails.

IT IS ORDERED denying Defendant's Motion to Dismiss [Doc. # 3].