**Patrick ZIDON, Plaintiff,**

v.

**Linda PICKRELL, Defendant.**

**No. A1–04–113.**

United States District Court,
D. North Dakota,
Southwestern Division.

Nov. 8, 2004.

---

Rodney E. Pagel, Pagel Weikum, PLLP, Bismarck, ND, for Plaintiff.

Lawrence R. Klemin, David Schweigert, Bucklin, Klemin & McBride, P.C., Bismarck, ND, for Defendant.

## ORDER DENYING MOTION TO DISMISS

HOVLAND, Chief Judge.

Before the Court is defendant Linda Pickrell's Motion to Dismiss filed on October 20, 2004. On October 25, 2004, the plaintiff, Patrick Zidon, filed a motion opposing dismissal. For the following reasons, the Defendant's motion is denied.

## I. BACKGROUND

The plaintiff, Patrick Zidon, is a North Dakota resident. The defendant, Linda Pickrell, is a resident of Colorado. Zidon and Pickrell cultivated a romantic relationship after meeting online in September 2000. Zidon ended the relationship in March 2004. Zidon, in a complaint filed on September 21, 2004, alleged that Pickrell created a Web site entitled "Monster of Love: Surviving Love/Sex Addicts and Spiritual Predators" at the domain name www.patrickzidon.com following their breakup, where she posted allegedly defamatory statements. In addition, Zidon alleges Pickrell e-mailed a hyper link to the Web site to persons in the Bismarck, North Dakota, area as well as the public at large. In his complaint, Zidon sets forth claims for defamation and intentional infliction of emotional distress.

## II. LEGAL DISCUSSION

Pickrell requests dismissal citing lack of jurisdiction over the person and improper venue pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure.

### A. PERSONAL JURISDICTION

The initial inquiry is whether the Court has personal jurisdiction over the defendant, Linda Pickrell. The Motion to Dismiss was filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of jurisdiction over the party. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 647 (8th Cir.2003) (citing *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir.1990); *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir.

1988)). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004). The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. *Epps*, 327 F.3d 642, 647 (citations omitted).

■ As a preliminary matter, it should be noted that this action is in federal court based on diversity jurisdiction. See 28 U.S.C. § 1332(a). Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court in a diversity action will have personal jurisdiction to the same extent as a state court of the state in which that federal district court sits. *Dean v. Olibas*, 129 F.3d 1001, 1003 (8th Cir.1997). Therefore, when this Court sits in diversity, the analysis for personal jurisdiction involves two steps: (1) the court must determine whether the State of North Dakota would accept jurisdiction under the facts of this case; and (2) the court must determine whether the exercise of jurisdiction comports with constitutional due process restrictions. *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 706–707 (8th Cir.2003) (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)). To satisfy the first step of the jurisdictional analysis, the Court will address the relevant North Dakota provisions governing personal jurisdiction over non-resident defendants.

■ The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the

fullest extent permitted by due process...." *Hansen v. Scott*, 645 N.W.2d 223, 230 (N.D.2003) (citing *Auction Effertz, Ltd. v. Schecher*, 611 N.W.2d 173 (N.D. 2000); *Hust v. Northern Log, Inc.*, 297 N.W.2d 429, 431 (N.D.1980)). The Eighth Circuit has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the two-step test collapses into a single question of whether the exercise of personal jurisdiction comports with due process. *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001); *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir.1994); see *Hansen v. Scott*, 645 N.W.2d 223, 232 (N.D.2002) (recognizing that a federal court sitting in diversity may collapse the two step framework under North Dakota law).

■ "Due process requires minimum contacts between [a] non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir.2004) (citing *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir.1996); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum, i.e., general and specific. With respect to general jurisdiction over a defendant, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever*, 380 F.3d 1070, 1073 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868,

80 L.Ed.2d 404 (1984)). A state has specific jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state.

Both categories of minimum contacts require some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, and thus invokes the benefits and protections of its laws. If a court determines that a defendant has minimum contacts with the forum state, the court must then consider " 'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.' " *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ The Eighth Circuit has established a five-part test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant: (1) the nature and quality of [a defendant's] contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5)[the] convenience of the parties. *Dever*, 380 F.3d 1070, 1073–74 (citing *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. *Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995). The Eighth Circuit affords "significant weight" to the first three factors.

Zidon sets forth several alleged contacts Pickrell has with North Dakota: (1) Pickrell made telephone calls to Zidon; (2) Pickrell sent e-mails and instant messages over the Internet to Zidon; and (3) Pickrell created a Web site and encouraged individuals to visit that site via e-mail and other mediums. Based on those contacts, Zidon contends the Court has authority to exercise personal jurisdiction over Pickrell. Zidon limits his argument to the exercise of specific jurisdiction.

As previously noted, specific jurisdiction requires that the cause of action arise out of or relate to the defendants' contacts with the forum state. *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 648 (8th Cir.2003). The Court will analyze each of the Pickrell's contacts in relation to the claims raised by Zidon and the factors prescribed by the Eighth Circuit.

### 1. NATURE AND QUALITY OF CONTACTS

Under this factor, the primary issue is whether the non-resident defendants "have fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereignty." *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 576 (8th Cir. 1992) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). The fair warning requirement will be satisfied if the defendant has "purposefully directed" his or her activities at the residents of the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The contact(s) with the forum state must be more than "random, fortuitous, or attenuated." *Id.*

### a) ZIDON'S WEB SITE

Zidon alleges that Pickrell's Web site[1] provides the Court with specific jurisdic-

---

**1.** As quoted in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997), "[a] 'site' is an Internet address that permits the exchange of information with a host computer. *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996). The

tion. Many courts have examined jurisdictional issues involving the Internet and how electronic contacts affect the exercise of personal jurisdiction. See Richard E. Kaye, Annotation, "Internet Web Site Activities of Nonresident Person or Corporation as Conferring Personal Jurisdiction Under Long–Arm Statutes and Due Process Clause," 81 A.L.R.5th 41 (2003). In some jurisdictions, a "sliding scale" test has been adopted in Internet cases to determine whether the courts have personal jurisdiction over a non-resident defendant. This test involves an examination of the active versus passive nature of the web site. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (utilizing a "sliding scale" test for jurisdiction which considers a web site's level of interactivity and the nature of commercial activities conducted over the Internet). There are other courts that apply the "effects test" derived from a United States Supreme Court decision entitled *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) in which a California resident sued several Florida residents, including the author and editor of a National Enquirer article, for libel. The United States Supreme Court held the exercise of jurisdiction was proper because of the foreseeable "effects" in California of the non-resident defendant's activities.

■ In *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704 (8th Cir.2003), the Eighth Circuit discussed whether and how a Web site could provide minimum contacts to invoke personal jurisdiction. The Court recognized that a majority of the circuits have adopted the analytical framework set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997). The Eighth Circuit quoted Zippo and stated "that the likelihood that personal jurisdiction can be constitutional-

ly exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Lakin*, 348 F.3d 704, 710 (quoting *Zippo*, 952 F.Supp. 1119, 1124). The Eighth Circuit noted that the federal court in Zippo created a "sliding scale" test to measure the nature and quality of the commercial contacts for assessing the exercise of personal jurisdiction. The Eighth Circuit also restated a portion of the Zippo court's holding that described the "sliding scale" concept:

> At one end of the spectrum are situations where the defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Lakin*, 348 F.3d 704, 710–11 (quoting *Zippo*, 952 F.Supp. 1119, 1124). The Eighth Circuit concluded that the "sliding scale" approach was appropriate in cases of specific jurisdiction. The Court must analyze

'Web' or 'World Wide Web' refers to the collection of sites available on the Internet."

whether Pickrell's Web site provides the Court with specific jurisdiction.

■■■ Both parties seem to agree that Pickrell is not conducting business or entering into contracts with residents of foreign jurisdictions by way of her Web site. According to Zippo, Pickrell's Web site must fall into either the middle ground or the passive end of the "sliding scale" spectrum. Whether jurisdiction can be exercised based on a Web site falling in the middle ground of the "sliding scale" spectrum is based on its level of interactivity.

Zidon characterizes Pickrell's Web site as interactive for several reasons. First, the Web site has an e-mail hyper link. Second, the Web site offers detailed information about Zidon including where he resides. Third, the Web site contains a bulletin board allowing individuals to exchange information. Last, the Web site encourages viewers to contact the Web creator. Based on those characteristics, Zidon contends the Court can exercise jurisdiction over Pickrell based solely on the operation of her Web site. Pickrell disagrees and maintains the Web site should be characterized as passive.

Neither this Court nor the Eighth Circuit have addressed whether a Web site with the characteristics of Pickrell's Web site meets the requisite level of interactivity to exercise jurisdiction. However, the Fifth Circuit declared a similar Web site interactive in the case of *Revell v. Lidov,* 317 F.3d 467 (5th Cir.2002). In Revell, the plaintiff, a Texas resident, brought an action for defamation against multiple non-residents. The action stemmed from comments publicized on an Internet bulletin board maintained by Columbia University. The bulletin board allowed patrons to post their literary works or read the literary works of others. The Fifth Circuit held the Web site was interactive due to the nature of an Internet bulletin board. The

court said, "[t]his means that individuals send information to be posted, and receive information that other have posted . . . . the visitor may participate in an open forum hosted by the website. Columbia's bulletin board is thus interactive." *Id.* at 472; see *EDIAS Software Int'l, L.L.C. v. BASIS Int'l Ltd.,* 947 F.Supp. 413, 420 (D.Ariz.1996) (stating "[a] forum resembles a bulletin board where messages can be posted by the page visitor or the page owner. Thus, a Web page with a forum allows interaction between the page visitors and between the owner"). However, the Fifth Circuit ultimately concluded it could not exercise jurisdiction over the non-resident defendants based solely on the "low-level of interactivity of the bulletin board." *Id.* at 476 (reaching that conclusion after assessing the bulletin board under Calder v. Jones). The Fifth Circuit ultimately held that Texas could not exercise jurisdiction over non-resident defendants who posted the article on the Internet because the article did not refer to Texas; the article was not directed at Texas readers; and the defendants did not know the plaintiff was a resident of Texas. *Id.*

Following the decision in Revell, the Court finds Pickrell's Web site is interactive under the "sliding scale" approach adopted by the Eighth Circuit. However, the Court cannot exercise jurisdiction over Pickrell based solely on her creation and maintenance of the Web site. Additional contacts with North Dakota are needed to exercise jurisdiction.

b) THE CALDER "EFFECTS TEST"

As previously discussed, the "effects test" as recognized in the United States Supreme Court case of *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), may provide an additional basis for exercising personal jurisdiction. In Calder, a California entertainer brought a

libel action against Florida residents who were writers and editors of the National Enquirer, a Florida-based weekly newspaper with a nationwide circulation. The Supreme Court held that California could assert jurisdiction over the non-resident defendants because the defendants' intentional actions were aimed at California, they knew the allegedly libelous articles "would have a potentially devastating impact" on the plaintiff, and they knew the "brunt of the harm" would be suffered in California. Based on those facts, the Supreme Court concluded the defendants could "reasonably anticipate being haled into court" in California. 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

The Eighth Circuit has recognized the "effects test" as articulated in *Calder v. Jones. See General Electric Capital Corp. v. Grossman*, 991 F.2d 1376, 1387 (8th Cir.1993); *Hicklin Engineering, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992); *Dakota Indus., Inc., v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir.1991). However, the Eighth Circuit has used the "effects test" as merely an additional factor to consider when evaluating a defendant's relevant contacts with the forum state. *See Hicklin Engineering, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (holding that although the defendants' alleged harmful activities may have harmed the plaintiff in the state of Iowa, "absent additional contacts, this effect alone will not be sufficient to bestow personal jurisdiction."); *Dakota Indus., Inc., v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir.1991) (stating that "[i]n relying on Calder, we do not abandon the five-part test.... We simply note that Calder requires the consideration of additional factors when an intentional tort is alleged").

Pickrell's comments on her Web site and the e-mail messages sent to individuals in North Dakota may subject her to jurisdiction under the "effects test." *See EDIAS Software Int'l, L.L.C. v. BASIS Int'l Ltd.*, 947 F.Supp. 413, 420 (D.Ariz.1996) (stating "e-mail messages to Arizona and Compuserve Web site which reaches Arizona customers count as additional 'contacts' under a minimum contacts analysis, but additionally confer jurisdiction in Arizona under the 'effects test.'"). It is clear from the record that Pickrell's Internet communications were directed uniquely toward the State of North Dakota. *See Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir.2002) (holding Texas could not exercise personal jurisdiction over nonresident defendants who posted an article on the Internet because the article did not refer to Texas and was not directed at Texas readers, and defendants did not know the plaintiff was a Texas resident); *Young v. New Haven Advocate*, 315 F.3d 256, 263–64 (4th Cir.2002) (finding Virginia could not exercise jurisdiction because the defamatory comments were posted on a Web site which was not designed to attract or serve a Virginia audience); *Barrett v. Catacombs Press*, 44 F.Supp.2d 717, 730–31 (E.D.Pa.1999) (holding Pennsylvania could not exercise jurisdiction over a non-resident because the defamatory statements posted on the Internet did not concern the plaintiff's work activities in Pennsylvania, but were directed at the plaintiff's work outside the state).

The record reveals that Pickrell deliberately and knowingly directed the Web site, e-mail, and Internet comments at the State of North Dakota because North Dakota is Zidon's residence. The following comments, which appear on Pickrell's Web site, shed light on her intentions:

As a businessman and community leader in Bismarck, North Dakota, few would

suspect his double life of deceit, lies and the trail of tears he leaves behind him. A warning, this man plans to pursue a career in psychological therapy. If you have a history with this man you'd like to share, please contact webmaster@patrickzidon.com.

. . .

A business man and community leader in Bismarck, North Dakota, Patrick John Zidon is manager of Bismarck Lumber. He is a father of one grown son, former husband of an artist/medical technician and claims to have been: past president of Dakota Zoo, past president of the Nodak Lumberman's Association, past president of his Catholic church's counsel, past chair of the legislative committee for the Northwestern Lumberman's Association, . . . . He recently graduated (supposedly in May of 2004) from the University of Mary with degrees in business and psychology. He is a predator.

The Web site reveals that the focus of the Web site was North Dakota. Pickrell knew Zidon was a resident of North Dakota, and knew the "brunt of the injury" would be felt in North Dakota. The Court finds that Pickrell particularly and directly targeted North Dakota with her Web site and e-mails, and specifically targeted North Dakota resident Patrick Zidon. In summary, the Court is satisfied that the requirements of the "effects test" as enumerated in Calder v. Jones have been met.

Based on the aforementioned contacts, this factor weighs in favor of the exercise of personal jurisdiction.

## 2. QUANTITY OF CONTACTS

It is well-established that specific jurisdiction can arise from a single contact with the forum state. *Fulton v. Chicago, Rock Island & P.R. Co.*, 481 F.2d 326, 334–36 (8th Cir.1973). However, when specific jurisdiction is being alleged the quantity of contacts is not determinative. *West Publishing Co. v. Stanley*, 2004 WL 73590, *4 (D.Minn. Jan.7, 2004); (citing *Marquette Nat'l Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 295 (Minn.1978); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Marshall v. Inn of Madeline Island*, 610 N.W.2d 670, 674 (Minn.Ct.App.2000)). Thus, the Court is not concerned with the number of contacts made for purposes of whether specific jurisdiction exists.

## 3. RELATION OF CONTACTS TO CAUSE OF ACTION

The Court recognizes that all of Pickrell's contacts with North Dakota are related to Zidon's claims of defamation and intentional infliction of emotional distress. Each claim arises out of the contacts with North Dakota. This factors weighs in favor of the exercise of personal jurisdiction.

## 4. INTEREST OF THE FORUM STATE

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance." *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 694 (8th Cir.2003); *Northrup King Co. v. Compania Productora Semillas Algodoneras*, 51 F.3d 1383, 1388 (8th Cir.1995); *Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206, 1210 n. 5 (8th Cir.1977). The interest of the forum state is the fourth factor to be considered for purposes of asserting personal jurisdiction.

It stands to reason that North Dakota has an interest in adjudicating these claims and providing a forum for its residents. Therefore, the fourth factor weighs in favor of the exercise of personal jurisdiction. *See Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir.1997) (quickly dispensing with this part of the test by assuming the forum

state has an interest in providing a forum for its residents).

### 5. CONVENIENCE OF THE PARTIES

The Court understands that Pickrell currently resides in Colorado and it would be burdensome for her to defend the suit in North Dakota. However, equal hardship would be felt by Zidon if he were forced to litigate this matter in Colorado. This factor does not favor either party.

In summary, based on Pickrell's contacts with North Dakota and the totality of the circumstances, the Court finds that exercising jurisdiction over Linda Pickrell comports with due process. *See Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, 111 F.3d 1386, 1390 (8th Cir.1997). The exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. An application of the "effects test" as derived from Calder v. Jones in the context of Internet communications is appropriate and warranted.

### B. VENUE

"[Section 1404(a)] assumes that venue is proper in the court where the action is initially filed, and also that the court has jurisdiction over the person of the defendant." *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1201 (8th Cir.1990). "Change of venue, although within the discretion of the district court, should not be freely granted. Courts are in the business of deciding cases, not playing procedural hockey among available districts at the whim of dissatisfied parties." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir.1982) overruled on other grounds, *Missouri Housing Development Com'n v. Brice*, 919 F.2d 1306, 1311 (8th Cir.1990).

When considering a motion to transfer a civil action to another district or division where it might have been brought, a court is statutorily required to balance three factors: (1) convenience of parties, (2) convenience of witnesses, and (3) interests of justice. 28 U.S.C. § 1404(a). In keeping with the "flexible and multifaceted analysis that Congress intended to govern motions to transfer within the federal system," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), the evaluation of a transfer motion is not limited to these three factors, but instead, "such determinations require case-by-case evaluation of particular circumstances at hand and consideration of all relevant factors." *Terra Int'l., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir.1997), cert. denied, 522 U.S. 1029, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997).

### 1. CONVENIENCE OF THE PARTIES

■ Regardless of where this action is venued, one of the parties will claim to be inconvenienced and placed at a disadvantage at trial. In this case, it is more convenient for Pickrell to litigate in Colorado. However, Zidon chose to litigate in North Dakota. His choice must be afforded some deference. *See Hubbard v. White*, 755 F.2d 692, 694–95 (8th Cir.1985) cert. denied, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985); *Nelson v. Soo Line Railroad Co.*, 58 F.Supp.2d 1023, 1026 (D.Minn.1999). Transferring this action to a district court in Colorado would only serve to shift the alleged inconvenience and hardship from Pickrell to Zidon. *Terra Int'l Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696–97. "Merely shifting the inconveniences from one side to the other ... is not a permissible justification for a change of venue." *Id.* The Court finds this factor weighs in favor of a North Dakota venue.

## 2. CONVENIENCE OF THE WITNESSES

The factor generally afforded the greatest weight by courts considering a motion for change of venue is the convenience of the witnesses. Nevertheless, this factor is not dispositive and must still be weighed against the other relevant factors—such as the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The party with the longest list of potential witnesses who reside in their respective district will not necessarily prevail. *See Terra Int'l. Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688 at 696 (noting that "sheer numbers of witnesses will not decide which way the convenience factor tips"). Rather, the Court "must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Reid–Walen v. Hansen,* 933 F.2d 1390, 1396 (8th Cir.1991).

Neither party has provided the Court with a list of potential witnesses. Both parties merely describe witnesses they intend to call in their respective pleadings. To prove the elements of defamation[2] and intentional infliction of emotional distress[3] Zidon intends to use numerous fact witnesses:

> Just some of the elements which witnesses will be called to testify on include (a) witnesses to establish plaintiff's reputation, character and good standing in the community prior to this website, (b) witnesses to establish that defendant in fact did actively send links to this website to them and to further establish their response and impact upon receiving the e-mails and accessing the www.patrickzidon.com website, (c) witnesses testifying as to the impact this has had upon plaintiff's physical and emotional health, and (d) witnesses testifying as to the impact this had upon plaintiff's current reputation in the community.

According to Zidon, these witnesses would all reside in North Dakota. Zidon specifically identifies three North Dakota residents solicited by Pickrell's e-mails as witnesses he would call.[4] See Affidavit of Patrick Zidon, ¶¶ 7–8. On the other hand, Pickrell intends to call witnesses in her defense and states that all those witnesses reside outside of North Dakota. However, her pleadings seem to suggest that those witnesses would also reside outside of Colorado.[5]

---

**2.** North Dakota has adopted the common-law definition of libel which is codified at N.D. Cent.Code § 14–02–03. *See Vanover v. Kansas Life Ins. Co.,* 553 N.W.2d 192, 196 (N.D. 1996). That section reads:

> Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes the person to be shunned or avoided, or which has a tendency to injure the person in the person's occupation.

**3.** The North Dakota Supreme Court has stated the elements of an action for intentional infliction of emotional distress as extreme and outrageous conduct that is intentional or reckless and causes severe emotional distress. *Zuger v. State,* 673 N.W.2d 615, 621 (N.D. 2004) (citing *Muchow v. Lindblad,* 435 N.W.2d 918, 923–24 (N.D.1989)).

**4.** Two of the individuals, Tammy Perry and Susann Cuperus, are professors at the University of Mary in Bismarck, North Dakota. The third individual, Terry Lincoln, is associated with the Dakota Zoo and apparently also lives in Bismarck.

**5.** Pickrell attests that all stories and information on the Web site are "true and personal memories of those who knew him and information he has openly shared with *us* of his

Not surprisingly, both parties have minimized the value of the other's potential witnesses while touting the importance of their own. Pickrell contends that Zidon could present his witnesses by either deposition or live video if the trial were venued in Colorado. Of course, the knife cuts both ways, and the same could be said for the presentation of Pickrell's witnesses in North Dakota. Neither party has suggested witnesses would be unwilling or unable to travel to either venue. With the information available to the Court, this factor weighs in favor of a North Dakota venue.

### 3. INTERESTS OF JUSTICE

In *Terra Int'l. Inc. v. Mississippi Chem. Corp.*, the Eighth Circuit recognized several factors to consider in the interest of justice for Section 1404(a) purposes: (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. 119 F.3d 688, 696 (8th Cir.1997). Regarding the first factor, the Court finds that judicial economy would not be better served by a transfer of venue.

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under typically bears the burden of proving that a transfer is warranted." *Terra Int'l. Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir.1997). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947);[6] *Reid–Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir.1991) (finding that the defendant "must overcome the heavy presumption against disturbing the plaintiff's forum choice"). Zidon currently resides and works in North Dakota. Zidon also states that a substantial part of the events giving rise to this claim occurred in North Dakota.

The next factor the Court must consider is the comparative costs to the parties of litigating in each forum. Neither party has offered the court any estimates as to how much more it would cost to try the case in the other party's forum of choice.

Finally, turning to the remaining factors, namely each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law, the Court sees no difficulty in either party enforcing a favorable judg-

own free will." Affidavit of Linda Pickrell, ¶ 6 (emphasis added). Further, Pickrell attests that all quotations appearing on the Web site are statements from Patrick Zidon himself, or "persons in States *other than Colorado or North Dakota* who have shared their stories about Patrick Zidon and his activities." (Emphasis added).

6. Gulf Oil was originally decided in the context of the doctrine of *forum non conveniens*— a precursor to Section 1404(a)—where the U.S. Supreme Court enunciated a general list of private and public interests, which have assisted the Courts in evaluating a motion to

transfer venue. Section 1404(a) is not merely a codification of *forum non conveniens*, but rather a modification that eliminated the harsh result of dismissal. As a consequence, the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad. *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). "This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

ment on its claims in either federal forum. Thus, this factor does not weigh in favor of transfer. Additionally, the Court does not find any relative advantages or obstacles to a fair trial for either party in either forum. The Court finds that the balance of the interest of justice factors weighs in favor of a North Dakota venue.

## III. CONCLUSION

In summary, the Court finds that Zidon's claims arise out of Pickrell's contacts with North Dakota via the Internet and establish personal jurisdiction. The exercise of personal jurisdiction over Pickrell based on such contacts does not offend due process. An application of the "effects test" derived from *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), in the context of Internet activity, is appropriate and warranted. The exercise of personal jurisdiction is proper because of the foreseeable "effects" of Pickrell's Internet communications in North Dakota. It is clear that Pickrell's Internet communications were expressly targeted at, and directed to, the forum State of North Dakota. The web site at issue directly targeted North Dakota, and specifically, North Dakota resident Patrick Zidon. There is no question that the focus of the web site was directed uniquely toward North Dakota and Patrick Zidon.

This Court also finds that Pickrell has not met her burden of showing that a transfer to Colorado is more convenient for the parties or witnesses, or is in the interests of justice. The Court, in its discretion, expressly finds that a change of venue is neither required nor warranted. Pickrell's Motion to Dismiss (Docket No. 7) is DENIED.

IT IS SO ORDERED.